UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————————

|  |  |  |
|---|---|---|
| PHILIP KOENIG and ENRICO LUONGO,<br>on behalf of themselves and all others<br>similarly situated, | : <br> : <br> : <br> : | C.A. No. 13-cv-1186 (ER)<br><br>**ECF CASE** |
| Plaintiffs, | : <br> : | |
| v. | : <br> : | |
| BOULDER BRANDS, INC. and GFA BRANDS, INC., | : <br> : | **JURY TRIAL**<br>**DEMANDED** |
| Defendants. | : | |

———————————————————————————

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL ALLEGATIONS ................................................................................... 4

REGULATORY FRAMEWORK .............................................................................. 5

ARGUMENT ....................................................................................................... 8

    I.     STANDARD OF REVIEW .................................................................. 8

    II.    PLAINTIFS' CLAIMS ARE NOT PREEMPTED ................................. 8

    III.   PLAINTIFFS STATE A CLAIM UNDER GBL § 349 ........................... 16

        A.  Plaintiffs Sufficiently Allege Deceptive Conduct........................ 17

        B.  Plaintiffs Sufficiently Allege That They Have Suffered an
            Injury as a Result of Defendants' Deceptive Conduct ............... 19

    IV.   PLAINTIFFS ADEQUATELY ALLEGE BREACH OF WARRANTY CLAIMS ........ 21

    V.    DEFENEDANTS WERE UNJUSTLY ENRICHED ............................ 22

    VI.   STATUTE OF LIMITATIONS FOR PLAINTIFFS' UNJUST
         ENRICHMENT CLAIMS IS SIX YEARS ....................................... 23

CONCLUSION.................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                                                                    **<u>Page</u>**

*Ackerman v. Coca-Cola Co.*,
   No. 09-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010).............................................. passim

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)............................................................................................ 8

*Bankhead Corp., Div. of Bankhead Enterprises, Inc.*,
   125 A.D.2d 740 (N.Y. App. Div. 1986) ................................................................. 16

*Bates v. Dow Agrosciences LLC*,
   544 U.S. 431 (2005)........................................................................................... 9, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................. 8, 9

*Coombs v. Jervier*,
   74 A.D.3d 724 (N.Y. App. Div. 2010) .................................................................. 23

*Cox v. Microsoft Corp.*,
   10 Misc. 3d 1055A, 809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) ................................. 20

*Elias v. Ungar's Food Products, Inc.*,
   252 F.R.D. 233 (D.N.J. 2008)............................................................................... 22

*Erickson v. Pardus*,
   551 U.S. 89 (2007)................................................................................................. 9

*Escava v. Escava*,
   9 Misc. 3d 1101(A) (N.Y. Sup. Ct. 2005).............................................................. 24

*Famous Horse Inc. v. 5th Ave. Photo Inc.*,
   624 F.3d 106 (2d Cir. 2010)................................................................................... 8

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*,
   689 F. Supp. 2d 585 (S.D.N.Y. 2010)................................................................... 21

*Ferring B.V. v. Allergan, Inc.*,
   No. 12-2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013)................................... 23

## TABLE OF AUTHORITIES
### (continued)

**Case**                                                                                         **Page**

*Golden Pac. Bancorp v. F.D.I.C.*,
   273 F.3d 509 (2d Cir. 2001)..................................................................................... 23

*Goshen v. Mut. Life Ins. Co. of New York*,
   98 N.Y.2d 314 (2002) ........................................................................................... 16

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) ........................................................................... 20

*Halebian v. Berv*,
   644 F.3d 122 (2d Cir. 2011)..................................................................................... 8

*Hanley v. Chicago Title Ins. Co.*,
   No. 12-4418-ER, 2013 WL 3192174 (S.D.N.Y. June 24, 2013)............................... 8

*Henderson v. J.M. Smucker Co.*,
   No. 10-4524, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011)................................... 18

*Holk v. Snapple Beverage Corp.*
   575 F.3d 329 (3d Cir. 2009)..................................................................................... 9

*Hughes v. Ester C Co.*,
   No. 12-0041, 2013 WL 1080533 (E.D.N.Y. Mar. 15, 2013)............................. 18, 22

*In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*,
   701 F. Supp. 2d 356 (E.D.N.Y. 2010) .............................................................. 19-23

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008)..................................................................... 14

*Jermyn v. Best Buy Stores, L.P.*,
   256 F.R.D. 418 (S.D.N.Y. 2009) ........................................................................... 24

*Jernow v. Wendy's Intern., Inc.*,
   No. 07-3971, 2007 WL 4116241 (S.D.N.Y. Nov. 15, 2007)............................. 19, 20

# TABLE OF AUTHORITIES
## (continued)

**Case**                                                                                           **Page**

*Knipe v. SmithKline Beecham*,
   583 F. Supp. 2d 553 (E.D. Pa. 2008) ...................................................................... 13

*Lynch v. Tropicana Prods., Inc.*,
   No. 11-07382, 2013 WL 2645050 (D.N.J. June 12, 2013)................................... 18, 20

*Mahmood v. Research in Motion Ltd.*,
   No. 11-5345 KBF, 2012 WL 242836 (S.D.N.Y. Jan. 24, 2012) ............................ 23

*Malmsteen v. Berdon, LLP*,
   477 F. Supp. 2d 655 (S.D.N.Y. 2007)...................................................................... 25

*Moss v. Walgreen Co.*,
   765 F. Supp. 2d 1363 (S.D. Fla. 2011) ................................................................... 21

*New York State Rest. Ass'n v. New York City Bd. of Health*
   556 F.3d 114 ....................................................................................................... 9, 10

*Niagara Mohawk Power Corp. v. Freed*,
   265 A.D.2d 938 (N.Y. App. Div. 1999) ................................................................. 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
   85 N.Y.2d 20 (1995) ............................................................................................... 16

*Pelman ex rel. Pelman v. McDonald's Corp.*,
   396 F.3d 508 (2d Cir. 2005)................................................................................. 8, 20

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*,
   642 F. Supp. 2d 1112 (C.D. Cal. 2009) ................................................................. 10

*Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*,
   33 Misc. 3d 1211(A) (N.Y. Sup. Ct. 2011).............................................................. 24

*Schandler v. New York Life Insurance Co.*,
   No. 09-10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011) ................................. 24

# TABLE OF AUTHORITIES
## (continued)

**Case**                              **Page**

*Serdarevic v. Advanced Med. Optics, Inc.*,
No. 06-7107, 2007 WL 2774177 (S.D.N.Y. Sept. 25, 2007), .................................................. 24

*Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*,
No. 11-4362, 2012 WL 1890388 (S.D.N.Y. May 23, 2012) .................................................. 20\

*Sims v. First Consumers Nat. Bank*,
303 A.D.2d 288 (N.Y. App. Div. 2003) .................................................. 16

*Smajlaj v. Campbell Soup Co.*,
782 F. Supp. 2d 84 (D.N.J. 2011) .................................................. 10, 11

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009).................................................. 16

*St. John's Univ., New York v. Bolton*,
757 F. Supp. 2d 144 (E.D.N.Y. 2010) .................................................. 9

*St. Paul Travelers Ins. Co. v. Nandi*,
15 Misc. 3d 1145(A) (N.Y. Sup. Ct. 2007).................................................. 24

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008).................................................. 2

*State Farm Mut. Auto. Ins. Co. v. Rabiner*,
749 F. Supp. 2d 94 (E.D.N.Y. 2010) .................................................. 24

*Stewart v. Smart Balance, Inc.*,
2012 WL 4168584 (D.N.J. June 26, 2012) .................................................. passim

*Sussman v. I.C. Sys., Inc.*,
No. 12-0181, 2013 WL 842598 (S.D.N.Y. Mar. 6, 2013).................................................. 9

*US Bank National Association v. Gestetner*,
103 A.D.3d 962 (N.Y. App. Div. 2013) .................................................. 24

*Vermont Pure Holdings, Ltd v. Nestlé Waters North America, Inc.*,
No. Civ. 03-11465, 2006 WL 839486 (D. Mass. Mar. 28, 2006).................................................. 10

## TABLE OF AUTHORITIES
### (continued)

**Case**                                                                        **Page**

*Waldman v. New Chapter, Inc.*,
   714 F. Supp. 2d 398 (E.D.N.Y. 2010) ........................................................... 18, 20

*Williams v. Gerber Prods.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................ 17, 18, 19

*Woods v. Maytag Co.*,
   807 F. Supp. 2d 112 (E.D.N.Y. 2011) ................................................................. 8

*Wyeth v. Levine*,
   129 S. Ct 1187 (2009) ............................................................................... 9

*Young v. Johnson & Johnson*,
   No. 12-2475, 2013 WL 1911177 (3d Cir. May 9, 2013) ................................................ 7


**Statutes**

21 U.S.C. §§ 301 et seq. ..................................................................................... 1

21 U.S.C. §§ 343 ................................................................................... passim

New York General Business Law § 349 ........................................................... passim


**Rules**

Fed. R. Civ. P. 8(a) ................................................................................ passim

Fed. R. Civ. P. 9(b) ..................................................................................... 20

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1, 8

**Regulations**

21 C.F.R. § 101.13 ......................................................................................... 5

21 C.F.R. § 101.62 ................................................................................... passim

**Regulations (continued)**                                                                              **Page**

21 C.F.R. § 130.10 ............................................................................................................ 6, 13

21 C.F.R. § 131.110 .......................................................................................................... 6, 13

21 C.F.R. § 165.110 ............................................................................................................. 13

58 Fed. Reg. 44, 025 (Aug. 18, 1993) ................................................................................. 7

Plaintiffs Philip Koenig and Enrico Luongo ("Plaintiffs") respectfully submit this Memorandum of Law in Opposition to the Motion of Defendants Boulder Brands, Inc. ("Boulder Brands") and GFA Brands, Inc. ("GFA") (collectively "Defendants") to dismiss Plaintiffs' Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

This action seeks redress for Defendants' misleading and deceptive representation that their enhanced milks were "fat free" when they in fact contained 1 gram of fat per serving. Defendants prominently made this uniformly deceptive representation on their "Fat Free" Enhanced Milks' cartons, on their website, and in their marketing and advertising promotions. In fact, Defendants posted this erroneous claim in no less than nine places on their "Fat Free" Enhanced Milks' cartons, making the phrase "Fat Free Milk" the most notoriously and most often used phrase on the packaging.  The clear intent of the repeated use of the phrase "Fat Free Milk" was to mislead Plaintiffs and the consuming public into believing that Defendants' "Fat Free" Enhanced Milks were fat free when they in fact contained substantial amounts of fat.

The 1 gram of fat per serving was, in fact, double the legal limit of 0.5 grams of fat per serving allowed under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA"), and 21 CFR - Code of Federal Regulations - Title 21: Food and Drugs for foods that are labeled "fat free."   *See* 21 C.F.R. § 101.62(b).[1]  Plaintiffs purchased Defendants' "Fat Free" milks based on Defendants' unlawful and deceptive misrepresentations, believing them to have the qualities Defendants warranted and Plaintiffs sought (free of fat), and they paid a price

---

[1] "The terms "fat free," "free of fat," "no fat," "zero fat," "without fat," "negligible source of fat," or "dietarily insignificant source of fat" or, in the case of milk products, "skim" may be used on the label or in labeling of foods, provided that: (i) The food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of fat per labeled serving." 21 C.F.R. § 101.62(b).

1

premium, thereby causing them injury.

Defendants concede that their labels violate federal law designed to prevent misleading fat content claims.  In moving to dismiss, Defendants concede that "the FDA has established a nutrient content claim for 'fat free' that applies to any food product, not just milk, and allows the use of the words 'fat free' on products that contain less than 0.5 grams of total fat per serving. *See* 21 C.F.R. § 101.62(b)."  (Def. Mem. at 6.)  Plaintiffs agree, and because Defendants' products at issue here had more than 0.5 grams of fat per serving, they did not comply with the regulation.  Indeed, Defendants have previously admitted that by adding omega-3s to their "Fat Free" Enhanced Milks, the "product no longer meets the FDA nutrient content claim for 'fat free.'"  *Stewart v. Smart Balance, Inc.*, Docket, No. 11-6174, (D.N.J.) (D.E. #30-1 at p. 9) (excerpt attached as Exhibit 1 to the Declaration of Todd S. Garber filed herewith).[2]  Defendants also changed the label on their milk products after litigation commenced against them such that the label no longer contains the "fat free" misrepresentation, a tacit admission of guilt.

Defendants do not deny the true fat content levels previously contained in their "Fat Free" Enhanced Milks.  Instead, Defendants argue that despite the prominence with which they promoted the milks as "fat free," Plaintiffs could not have been misled in their purchases because the fat content is disclosed in small print and on the label on the back of the milks' cartons. Defendants' attempt to blame consumers for not reading their small print disclosures, however, is unavailing because the overall impression created by the label and whether it is misleading and deceptive to a reasonable consumer is uniquely a matter of fact to be resolved by the jury.  A reasonable consumer should not be expected to look beyond prominent misleading representations in search of the truth buried in small print.

---

[2] This Court is permitted to take judicial notice of a document filed in another court.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).

Unable to escape these unassailable facts, Defendants argue that federal regulations both preempt Plaintiffs' claims and permit Defendants' conduct.  Plaintiffs, however, do not seek to impose different or greater obligations upon Defendants than the FDCA requires.  Rather, Plaintiffs' claims mirror the federal requirements, alleging that Defendants failed to abide by the FDCA, and in doing so, misled Plaintiffs in violation of the New York General Business Law § 349, breached an express warranty, and were unjustly enriched, rendering Defendants' preemption argument meritless.  Furthermore, while Defendants argue (and Plaintiffs accept) that state law cannot impose any requirements that are not identical to the applicable federal guidelines, here the federal guidelines explicitly prohibit Defendants' misstatements.

Defendants do not, and cannot, cite any authority supporting their contentions that (i) a company can claim that its product is "fat free" when, in truth, the product has more than 0.5 grams of fat per serving or (ii) the nutrient content claim "fat free" does not apply to combination multi-component products.  No such authority exists, as Defendants' arguments would render meaningless the nutrient content claim "fat free."

Further, Plaintiffs have amply alleged a breach of express warranty based on Defendants' breach of the written warranty stated on their "Fat Free" Enhanced Milks' cartons that the milks were fat free (they were not), and that Plaintiffs have suffered damages and been injured as a result thereof.  Defendants do not genuinely dispute Plaintiffs' express warranty claim, only parroting their meritless GBL § 349 defenses.  Finally, Defendants' argument for the dismissal of Plaintiffs' unjust enrichment claim and/or to shorten the class period related thereto rings hollow.

Because the allegations of the Complaint amply satisfy the notice pleading standard of Fed. R. Civ. P. 8(a) and are patently sufficient to sustain the claims upon which this action is predicated, Defendants' motion should be swiftly turned aside.

## FACTUAL ALLEGATIONS

Defendants market and sell "Fat Free" Enhanced Milks[3] using the Smart Balance® trademark. (Cplt. ¶¶ 1-4, 11-12.) Defendants' "Fat Free" Enhanced Milks were labeled as fat free even though they contained 1 gram of fat per serving. (Cplt. ¶¶ 2-5, 25-27, 36-41, 49-59.) Defendants posted this erroneous claim in no less than nine places on their "Fat Free" Enhanced Milks' cartons, making the phrase "Fat Free Milk" the most notoriously and most often used phrase on the packaging. (Cplt. ¶¶ 49-59.) The marketing of their "Fat Free" Enhanced Milks as "fat free" was intended to mislead consumers into believing that the enhanced milks were, in fact, free of fat. (Cplt. ¶¶ 2-4, 36, 58, 78-80.)

Defendants' labeling of their "Fat Free" Enhanced Milks violated 21 C.F.R. § 101.62(b). (Cplt. ¶¶ 2-5, 23-27, 37-44, 49-59, 63-66.) The "fat free" enhanced milks contained 1 gram of fat per labeled serving, twice the legal limit permitted by 21 C.F.R. § 101.62(b)(i). (Cplt. ¶¶ 2-5, 23-27, 37-44, 49-59, 63-66.) Compounding the confusing and misleading labeling of Defendants' "Fat Free" Enhanced Milks as fat free was the fact that one of Defendants' competitor marketed and sold fat free milk with omega-3s that was actually fat free and appropriately labeled its addition of oil with an asterisk, warning "adds a trivial amount of fat," in compliance with 21 C.F.R. § 101.62(b). (Cplt. ¶¶ 63-66.) Furthermore, the market is saturated with products which use the term "fat free" that add an ingredient that is a fat or is generally understood by consumers to contain fat, which actually comply with 21 C.F.R. § 101.62, and unlike Defendants' "Fat Free" Enhanced Milks, comply with state law. Defendants' "Fat Free" Enhanced Milks were the only products that contained more than 0.5 grams of fat per

---

[3] Defendants' "Fat Free" Enhanced Milks include (1) "Fat Free" Milk and Omega-3s; (2) Smart Balance® Lactose-Free "Fat Free" Milk and Omega-3s; and (3) Smart Balance® HeartRight® "Fat Free" Milk and Omega-3s & Natural Plant Sterols. (Complaint ("Cplt.") ¶ 1 n.1.)

serving that used the term "fat free" in their names.  (Cplt. ¶¶ 66-67.)

Plaintiffs Philip Koenig and Enrico Luongo regularly purchased Defendants' "Fat Free" Milk and Omega-3 products during the Class Period in the state of New York, paying a price premium.  (Cplt. ¶¶ 9-10.)  Were it not for Defendants' unfair and deceptive practices, Plaintiffs would not have purchased Defendants' "Fat Free" Enhanced Milks and would not have paid a price premium for the "Fat Free" Enhanced Milks based on Defendants' misrepresentations. (Cplt. ¶ 72.)  Defendants' conduct alleged herein constitutes an unconscionable and deceptive practice in violation of the GBL § 349, constitutes a breach of express warranty, and resulted in Defendants' unjust enrichment.

## **REGULATORY FRAMEWORK**

In 1990, Congress passed the Nutrition Labeling and Education Act, 21 U.S.C. §§ 343 *et seq.* ("NLEA"), which amended the FDCA.  The main section related to fat content disclosure that was added to the Code of Federal Regulations was §101.62, titled "Nutrient Content Claims for Fat, Fatty Acid, and Cholesterol Content of Foods."

The term "fat free" is a nutrient content claim regulated by the FDCA and NLEA.  *See* 21 U.S.C. § 343(r)(1); 21 C.F.R. § 101.62(b).  A nutrient content claim "that expressly or implicitly characterizes the level of a nutrient of the type required to be in nutrition labeling under § 101.9 or under § 101.36 may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation and with the applicable regulations in subpart D of this part or in part 105 or part 107 of this chapter."  21 C.F.R. § 101.13.

By labeling its enhanced milks as "fat free," Defendants were making a nutrient content claim that is not in accordance with "this regulation" -- namely 21 C.F.R. § 101.62(b), which states:

5

The terms "fat free," "free of fat," "no fat," "zero fat," "without fat," "negligible source of fat," or "dietarily insignificant source of fat" or, in the case of milk products, "skim" may be used on the label or in labeling of foods, provided that:

> (i)   The food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of fat per labeled serving; and

> (ii)  The food contains no added ingredient that is a fat or is generally understood by consumers to contain fat unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of fat," "adds a negligible amount of fat," or "adds a dietarily insignificant amount of fat."

21 C.F.R. § 101.62(b).  The regulation is clear: to use the nutrient content claim "fat free," the food must contain less than 0.5 grams of fat per serving.  The 1 gram of fat per serving contained in Defendants' "Fat Free" Enhanced Milks runs afoul of 21 C.F.R. § 101.62(b)(i) and makes compliance with § 101.62(b)(ii) impossible.  As such, Defendants' statements that their "Fat Free" Enhanced Milks are fat free violates the NLEA.  (Cplt. ¶¶ 2-5, 23-27, 37-44, 49-59.)

Plaintiffs agree with Defendants that the FDA has defined a "standard identity" for milk (21 C.F.R. § 131.110) and that a separate regulatory provision (21 C.F.R. § 130.10) allows for the deviation of milk from its standard identity by reducing overall milk fat.  Plaintiffs also agree that taken together these regulations permit the marketing of whole milk with 8 grams of fat per serving, 2% milk with 5 grams of fat per serving, 1% milk with 3 grams of fat per serving, and skim milk or fat free milk with less than 0.5 grams of fat per serving.  Defendants, however, cite no authority, and none exists, which permits them to then add fat back into fat free milk to the point where the resulting product contains more than 0.5 grams of fat per serving and yet still call the product "fat free milk."  No exceptions exist for combination multi-component products.

If Defendants' conduct were permissible, it would render all "nutrient content" claims

meaningless.  For example, manufacturers would be free to add fat back into every product that is currently labeled as "fat free" or add sugar back into every product that is currently labeled as "sugar free" and yet continue to label the products as fat free and sugar free, respectively.  It would create an end-run around all nutrient content claims, and the grocery store would revert back to the "Tower of Babel" the NLEA was specifically enacted to help clarify.  (Cplt. ¶ 21.)

The FDA has long recognized that nutrient content claims can be confusing to consumers.  *See Young v. Johnson & Johnson*, No. 12-2475, 2013 WL 1911177, at *2 (3d Cir. May 9, 2013) (citing Food and Drug Administration, *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Foods; Food Standards: Requirements for Foods Named by Use of a Nutrient Content Claim and a Standardized Term; Technical Amendment*, 58 Fed. Reg. 44,020, 44,025 (Aug. 18, 1993)).[4]  "In the interest of clarity and consistency with the nutritional information, FDA regulations therefore authorize nutrient content claims based on per serving amounts . . . that a food contains 'no fat' or 'no saturated fat' if it contains less than 0.5 grams per serving."  *Id.* (citing 21 C.F.R. § 101.62(b)(1), (c)(1)).

As such, the FDA has expressly regulated what standard a product must meet in order to use the nutrient content claim "fat free"; Defendants' "Fat Free" Enhanced Milks did not meet this standard; and Plaintiffs' claims for violations of GBL § 349, for breach of express warranty, and for unjust enrichment are consistent with the requirements of the FDCA.[5]

---

[4] The Third Circuit affirmed dismissal in *Young* because there, unlike here, the nutrient content claim "fat free" was accurate as the products at issue only contained 0.5 grams of fat per serving, not the 1 gram of fat per serving at issue here.

[5] The International Dairy Foods Association ("IDFA"), of which GFA is a member, agrees with this straightforward interpretation of 21 C.F.R. § 101.62(b).  The IDFA published its 454-page Milk and Milk Products Labeling Manual "to facilitate the truthful and accurate labeling of milk and milk products."  The IDFA "believes that the addition of fats, oils, or fat or oil containing ingredients to a product making a 'fat free' claim is acceptable as long as the product does not exceed 0.5 grams per reference amount," thus confirming Defendants' violation of 21 C.F.R.

## ARGUMENT

### I.   STANDARD OF REVIEW

In considering Defendants' motion to dismiss for failure to state a claim, "the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Hanley v. Chicago Title Ins. Co.*, No. 12-4418-ER, 2013 WL 3192174, at *2 (S.D.N.Y. June 24, 2013) (citing *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010)).  "The question on a Rule 12(b)(6) motion is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id.* at *2 (citations omitted).  "[T]he purpose of Federal Rule of Civil Procedure 12(b) (6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiffs statement of a claim for relief without resolving a contest regarding its substantive merits, and without regard for the weight of the evidence that might be offered in support of plaintiff's claims." *Id.* (citing *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).

Thus, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and . . . determine whether they plausibly give rise to an entitlement of relief." *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 118-19 (E.D.N.Y. 2011) (denying motion to dismiss GBL § 349 claim) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009)).  In order to survive a motion to dismiss, a party must plead just "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Complaints for violation of GBL § 349 and unjust enrichment are subject to the notice pleading standards of Fed. R. Civ. P. 8(a)(2).  *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (Section 349 claim "need only meet the bare-bones notice-

---

§ 101.62(b).  Here, however, the addition of oils exceeds the 0.5 grams per reference amount, making Defendants' use of the term "fat free" misleading and unacceptable.  (Cplt. ¶¶ 42-45.)

pleading requirements of Rule 8(a)"); *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) ("[D]ismissal of plaintiff's alternative theory of unjust enrichment on motion to dismiss would violate the liberal policy of Rule 8.") (citation omitted).  Under the notice pleading requirements, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*).

The detailed facts alleged in the Complaint render Plaintiffs' claims more than plausible, and therefore Defendants' motion to dismiss should be denied.

## II.    PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

Courts have consistently held that there is a strong presumption against preemption.  *See*, *e.g.*, *Wyeth v. Levine*, 129 S. Ct 1187, 1195 (2009); *New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) ("[W]e start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."); *Sussman v. I.C. Sys., Inc.*, No. 12-0181, 2013 WL 842598, at *3 (S.D.N.Y. Mar. 6, 2013) ("Courts addressing claims of preemption start from the presumption that Congress does not intend to supplant state law.").[6]  "Accordingly, the legislative exercise of the 'historic police powers of the State' is not to be superseded by a federal statute unless it was 'the clear and manifest purpose of Congress' to do so."  *Sussman*, 2013 WL 842598, at *3.

Where Congress has expressly preempted state law, the presumption against preemption requires the court to read the federal statute narrowly.  *Ackerman v. Coca-Cola Co.*, No. 09-0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010).  This is particularly true with respect

---

[6] *See also Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) ("In areas of traditional state regulation, [a court must] assume that a federal statute has not supplanted state law unless Congress has made such an intention 'clear and manifest.'" (citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005)).

to the regulation of food and beverage labeling and branding.  *See*, *e.g.*, *New York State Rest. Ass'n*, 556 F.3d at 123; *Holk*, 575 F.3d at 334-35.  "Helpfully, the NLEA is clear on preemption, stating that it 'shall not be construed to preempt any provision of State law, unless such provision is *expressly preempted*. . . .'"  *New York State Rest. Ass'n*, 556 F.3d at 123 (quoting  Pub.L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364 (21 U.S.C. § 343–1 note)) (emphasis in original).

Here, Defendants contend that Plaintiffs' claims are expressly preempted by the NLEA, because Plaintiffs' state law claims improperly seek to impose requirements on Defendants that differ from those imposed by federal regulations.  Simply put, Defendants are wrong.

The NLEA's "express preemption" provision at 21 U.S.C. § 343-1(a) only applies to state laws which impose requirements different from FDA regulations.  "New York . . .  broadly prohibit the misbranding of food in language largely identical to that found in the FDCA." *Ackerman*, 2010 WL 2925955, at *3.  Courts routinely recognize that state law causes of action are <u>not</u> preempted by the NLEA if they "seek to impose requirements that are identical to those imposed by the FDCA." *Id.* at *6; *see also Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011) (collecting cases). [7]  This is so because "a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law, even if the federal statute provides no private right of action."  *Ackerman*, 2010 WL 2925955, at *6 (citing *Bates*, 544 U.S. at 432). As detailed herein, Plaintiffs' claims under GBL § 349, for breach of express warranty, and for unjust enrichment seek only to enforce identical standards to the NLEA and are thus not

---

[7] *See also Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1122 (C.D. Cal. 2009) ("As long as Plaintiff's state claims do not impose different requirements than the FFDCA or FDA regulations, these claims are not preempted."); *Vermont Pure Holdings, Ltd v. Nestlé Waters North America, Inc.*, No. Civ. 03-11465, 2006 WL 839486, at *6 (D. Mass. Mar. 28, 2006) (noting that "the plain meaning of [21 U.S.C.] § 343–1(a)(1) is that states may regulate [food products which are the subject of a standard of identity established under § 341] so long as their standards mirror those set by the FDA.) (*citing Bates*, 544 U.S. at 447).

preempted.  *Smajlaj*, 782 F. Supp. 2d at 93 ("State laws are not preempted so long as the

requirements they impose on labeling are identical to the requirements of the FDCA.");

*Ackerman*, 2010 WL 2925955, at *6.

Defendants state that the FDA expressly regulates what standard a product must meet in

order to be called "fat free" and the ways in which milk can be modified in order to be called "fat

free" milk.  (Def. Mem. at 6.)  Plaintiffs agree and allege that Defendants do not comply with

this standard.  As such, Defendants' assertion that Plaintiffs' claims are an improper attempt to

impose requirements on Defendants that are not identical to the FDA's regulations is belied by

the allegations of the Complaint and Defendants' previous admission that the "product no longer

meets the FDA nutrient content claim for 'fat free.'"  *Stewart v. Smart Balance, Inc.*, Docket,

No. 11-6174, (D.N.J.) (Garber Decl. Ex. 1).

Indeed, Defendants are not advancing a preemption defense at all; rather, they are

attempting to demonstrate compliance with the FDCA as an affirmative defense.  There are six

reasons Defendants have no such defense:  (1) the plain language of 21 C.F.R. § 101.62(b)

demonstrates that Defendants' products are not in compliance (Cplt. ¶¶ 2-5, 23-27, 37-44, 49-59,

63-66); (2) Defendants' previously admitted that the "product no longer meets the FDA nutrient

content claim for 'fat free,'" *Stewart v. Smart Balance, Inc.*, Docket, No. 11-6174, (D.N.J.)

(Garber Decl. Ex. 1); (3) the FDA's interpretation of 21 C.F.R. § 101.62(b) in two warning

letters demonstrates that labels similar to those used by Defendants do not comply with the

FDCA  (Cplt. ¶¶ 28-32); (4) the IDFA's interpretation of the regulation demonstrates that

Defendants' labels did not comply with 21 C.F.R. § 101.62(b) (Cplt. ¶¶ 42-45); (5) there are

examples of compliant labels by competing products (Cplt. ¶¶ 60-66); and (6) Defendants' "Fat

Free" Enhanced Milks were the only products on the market that contained more than 0.5 grams of fat per serving and yet used the term "fat free" in their names.  (Cplt. ¶ 67.)[8]

Furthermore, and perhaps most importantly, 21 C.F.R. § 101.62(b)(ii) specifically contemplates the addition of ingredients to "fat free" foods, such as the Omega-3 added to Defendants' milks.  Section 101.62(b)(ii) only permits the continued use of the term "fat free" provided that, <u>after</u> the addition of the fatty ingredient, the "food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving . . . and . . . the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of fat," "adds a negligible amount of fat," or "adds a dietarily insignificant amount of fat."  21 C.F.R. § 101.62 (i) and (ii).  Defendants "Fat Free" Enhanced Milk labels failed to comply with either section.

The best support Defendants can muster for their untenable position is an advisory opinion wherein the FDA appears to permit the adding of minerals to bottled water above the level permitted to still qualify as "bottled water."  Defendants' argument by analogy is, however, inapplicable to these facts.  Here, the regulation at issue, 21 C.F.R. § 101.62(b)(ii), expressly governs the addition of an ingredient to a food whose label includes the nutrient content claim "fat free," and the regulation does not permit the addition of any ingredient that causes the level of fat to exceed 0.5 grams of fat per serving.  Therefore, there is no reason to look beyond 21 C.F.R. § 101.62(b)(ii) for guidance.

---

[8] Defendants citation to the labeling of Horizon's "Organic Fat-Free Milk with DHA Omega-3" to support their ill-fated preemption argument is curious to say the least.  (Def. Mem. at 10.)  As shown in the Complaint, the Horizon label is proper because the product contains less than 0.5 grams of fat per serving in compliance with 21 C.F.R. § 101.62(b) (i), and the Horizon label also complies with 21 C.F.R. § 101.62(b)(ii) by appropriately placing an asterisk after the ingredient "DHA Algal Oil," as the oil is an added ingredient that is a fat or is generally understood by consumers to contain fat, and then stating, after the list of ingredients, that the asterisked ingredient "Adds a trivial amount of fat."  (Cplt. ¶¶ 62-63.)  Defendants' labels, in contrast, violated both subsections of 21 C.F.R. § 101.62(b) with which the Horizon label complies.

Even if the advisory opinion on "bottled water" were applicable to "milk," which it is not, the opinion, as its name suggests, is advisory only and not entitled to deference. *Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 553, 574 (E.D. Pa. 2008) (declining to give preamble to federal rule controlling weight, holding preamble was advisory only and not entitled to deference as it was binding only on the agency, and, even assuming *arguendo* that the statements were entitled to full deference, the position advanced by the defendants was not covered by the FDA opinion at issue). This is particularly true, where, as here, the FDA has consistently taken a contrary position to the one advanced by Defendants. *Id*; s*ee also* Cplt. ¶¶ 28-32.

Furthermore, Defendants' analogy is fatally flawed. Defendants argue that the FDA guidance on labeling of purified waters establishes that it is appropriate to use a standardized name such as "purified water" or "fat free milk" even when the multi-component product no longer meets the standard." (Def. Mem. at 12.)[9] However, the appropriate comparison is between "purified water" and "milk," **not** "fat free milk." *Cf.* 21 C.F.R. § 131.110 ("Milk"); 21 C.F.R. § 165.110 ("Bottled Water" and "Purified Water"). "Milk" is a standardized name, as is "purified water." The term "fat free," however, is a "nutrient content" claim that modifies standardized names, making comparison of the standardized name "purified water" to "fat free milk" inappropriate. The regulations make this clear. Pursuant to 21 C.F.R. § 130.10, "fat free milk" specifically "do[es] not comply with the standard of identity [for milk] because of a deviation that is described by an expressed nutrient content claim [fat free]." The reality is, nothing found in the FDA guidance advanced by Defendants or elsewhere either allows any food to fail to live up to its "expressed nutrient content" claim, in this case "fat free," or states that nutrient content claims, such as "fat free," do not apply to combination products.

---

[9] "Purified water" falls within the nomenclature of "bottled water" under 21 C.F.R. § 165.110.

13

Indeed, this argument was previously and specifically rejected by the Honorable Judge Linares in *Stewart*. *See Stewart*, 2012 WL 4168584, at *5 (D.N.J. June 26, 2012) (denying Defendants motion to dismiss and holding the plaintiffs' New Jersey state law claims were not preempted as "Defendants do not point to any regulations or policy regarding multicomponent products specifically applicable to milk, and none of the policy guidelines or regulations specifically deal with the type of products at issue.").

Contrary to Defendants' argument, Judge Linares correctly analyzed the exact issues before this Court after extensive briefing that included two sur-replies filed by each party. *See Stewart*, 2012 WL 4168584, at *3 n.2. In *Stewart*, Judge Linares held that the plaintiffs' claims were not preempted because they did not "attempt to impose requirements different from those proscribed in federal statutes and regulations; rather, the gravamen of Plaintiffs' complaint is precisely that Defendants' products are misleading because they fail to comply therewith." *Stewart*, 2012 WL 4168584, at *6. While not binding on this Court, the well-reasoned analysis of Judge Linares, reached after extensive briefing and addressing the identical issues to those before this Court, in combination with Supreme Court and Second Circuit precedent on preemption, is highly persuasive authority that this Court should embrace.[10]

Defendants strangely fault Plaintiffs for focusing on the "fat free" nutrient content claim found in 21 C.F.R. § 101.62(b). (Def. Mem. at 14.) Of course Plaintiffs have focused on 21

---

[10] *See also Ackerman*, 2010 WL 2925955, at *6 ("a state statute mirroring its federal counterpart does not impose any additional requirement merely by providing a damage remedy for conduct that would otherwise violate federal law. . . . Accordingly, claims under state laws that parallel the FDCA's requirements are not preempted"). Defendants heavy reliance on *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) is misplaced. In *In re PepsiCo*, the regulations at issue did "not require the disclosure of source information, and therefore Plaintiffs' state law claims seeking to impose liability on these grounds are expressly preempted." *Id.* Said another way, in *In re PepsiCo, Inc.*, the labeling of the defendant's bottled water was in conformity with the FDA's standard of identity for purified water, and as such the plaintiff's claims were preempted. Here, the labeling is not in conformity with the "nutrient content" claim "fat free" and therefore, cannot be preempted as it is not imposing requirements beyond or different from those required by the FDCA and NLEA.

C.F.R. § 101.62(b), as it is the regulation that Defendants violated.  That does not mean that Plaintiffs, as Defendants state, are ignoring the other statutory provisions.  (*See infra* at 7.)[11]

Defendants claim that "[t]he FDA does not (and cannot be expected to) promulgate regulations specific to every possible variation of every manufactured food."  (Def. Mem. at 16.) Plaintiffs could not agree more.  That is why the FDA promulgated a regulation that deals with the use of the nutrient content claim "fat free" as it applies to all foods.  It is this regulation with which Defendants failed to comply.  *See* 21 C.F.R. § 101.62(b).  "When all of the relevant regulations and FDA policies are read together," (Def. Mem. at 16), this Court will conclude, just as the District of New Jersey concluded, that it is a violation of the FDCA to label a food as "fat free" when that food contains more than 0.5 grams of fat per severing, and as such, Plaintiffs' claims are not preempted.

Now on their fifth submission addressing this exact issue (including two briefs and two sur-replies in New Jersey), Defendants still can cite no authority, and none exists, which permits them to then add fat back into fat free milk to the point where the resulting product contains more than 0.5 grams of fat per serving and yet still call the product "fat free milk."  No exceptions exist for combination products.[12]

---

[11] Defendants' argument that they are required to mislabel their milks is a complete misreading of the FDCA. Defendants contend that the FDCA "requires the food to bear the 'name specified in the standard of identity'" which in this case is "fat free milk" citing 21 U.S.C. § 343(g)(2).  (Def. Mem. at 9.)  However, as already discussed, "fat free milk" is not a "standard of identity."  Only milk is a "standard of identity," and "fat free" is a separate "nutrient content" claim that is governed by § 101.62.  Moreover, 21 U.S.C. § 343(g)(2) does not stand for the proposition for which it is cited by Defendants.  All 21 U.S.C. § 343(g)(2) says is that if a food "purports to be or is represented as a food for which a definition and standard of identity has been prescribed," in this case "milk," then it would be misbranded unless it "bears the name of the food specified in the definition and standard," again in this case, "milk." Basically, if you call your product milk, it is misbranded unless it meets the definition of milk.

[12] In fact, Defendants interpretation runs contrary the express language of 21 C.F.R. § 101.62.  This section speaks in terms of "the food" containing less than 0.5 grams of fat per "per labeled serving."  As such, the regulation talks about the complete product in terms of the "labeled serving," which plainly applies to the products as a whole and does not break them out by the parts of their sum.  Here, the "labeled serving" of "the food" contains more than 0.5 grams of fat, and as such, cannot call itself a "fat free" food.

Finally, Plaintiffs' warranty claims are not preempted because they arise from a voluntary commitment undertaken by Defendants, rather than the independent operation of state law. *Stewart*, 2012 WL 4168584, at *6 (breach of warranty claim under the NLEA is "not preempted because the claim does not relate to requirements 'imposed under State law,' but rather imposed by the warrantor").  Defendants appear to concede this point, having failed to address it.

## III.    PLAINTIFFS STATE A CLAIM UNDER GBL § 349

Section 349 of the New York General Business Law prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  "The statute seeks to secure an 'honest market place' where 'trust,' and not deception, prevails."  *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 (2002) (citation omitted).  The statute provides for "actual damages or fifty dollars, whichever is greater."  *Id.*  In order to state a claim pursuant to § 349, a plaintiff must allege that: (1) the defendant's deceptive acts were directed at consumers,[13] (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.  *See, e.g.*, *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995).  Whether a particular act or practice is deceptive  is intensely-factual, and therefore motions to dismiss are disfavored.  *See, e.g.*, *Sims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289 (N.Y. App. Div. 2003); *Bankhead Corp., Div. of Bankhead Enterprises, Inc.*, 125 A.D.2d 740, 741 (N.Y. App. Div. 1986) ("[Q]uestions of fact as to the efficacy of [design of the ratchet-pawl mechanism] . . . presents an issue for jury determination."); *Ackerman*, 2010 WL 2925955, at *17 ("[W]hether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires consideration and weighing of

---

[13] Defendants do not contest that its conduct at issue was consumer oriented, nor could they.

evidence from both sides and therefore usually cannot be resolved through a motion to dismiss.")
(citing *Williams v. Gerber Prods.*, 552 F.3d 934, 938-39 (9th Cir. 2008)).

As set forth herein, the Complaint adequately alleges facts demonstrating that
Defendants' labeling, marketing, and advertising of their "Fat Free" Enhanced Milks was
deceptive, that Plaintiffs were mislead by these misrepresentations, and that their injuries were
caused by the deceptive and unlawful conduct at issue.  These allegations are plainly made with
sufficient particularity to satisfy notice pleading requirements of Fed. R. Civ. P. 8(a).

### A.    Plaintiffs Sufficiently Allege Deceptive Conduct

The Complaint alleges a GBL § 349 claim arising out of the affirmative misstatements
relating to the fat content in Defendants' "Fat Free" Enhanced Milks.  Specifically, the
Complaint alleges:

- Defendants deceptively marketed their "Fat Free" Enhanced Milks as "fat free" when in fact they contained 1 gram of fat per serving.  (Cplt. ¶¶ 2-5, 25-27, 36-41, 49-59);

- This 1 gram of fat per serving is double the legal limit of 0.5 grams of fat per serving that a food is legally permitted to contain to label itself "fat free."  (Cplt. ¶¶ 2-5, 23-27, 37-44, 49-59, 63-66);

- In total, the term "fat free" was used 9 times on each of Defendants' "Fat Free" Enhanced Milks cartons despite the fact that the milks contained 1 gram of fat per serving, intentionally misleading and confusing consumers.  (Cplt. ¶¶ 49-59);

- Plaintiffs purchased Defendants' "Fat Free" Milk after viewing misleading statements and representations on Defendants' "Fat Free" Enhanced Milk cartons, which led them to believe that the milk they were purchasing was fat free when it was not.  (Cplt. ¶¶ 7, 9-10, 69-72);

- Plaintiffs paid more than they would have otherwise paid because they believed that the "Fat Free" Milk and Omega-3s products were, in fact, free of fat.  (*Id.*)

Thus, Plaintiffs have sufficiently alleged that they and other reasonable consumers were
misled into believing that Defendants' "Fat Free" Enhanced Milks were fat free when they were

not.  *See Ackerman*, 2010 WL 2925955, at *17; *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d

398, 405-6 (E.D.N.Y. 2010) (the consumer sufficiently alleged misleading product packaging to

maintain deceptive acts and practices claim).

Defendants summarily declare that no reasonable consumer could have been misled by

the numerous claims that the "Fat Free" Enhanced Milks were "fat free" because the milk

cartons state in small print "1g Fat from Omega-3 Oil Blend" and because the label on the back

of the milk cartons reveals the 1g of fat per serving.  However, it is well settled that small print

and back-of-the-label disclosures do not insulate defendants from liability stemming from

otherwise misleading affirmative statements because reasonable consumers should not be

expected to scour a label to be sure prominent representations are not false.  *See, e.g.*, *Ackerman*,

2010 WL 2925955, at *16 ("The fact that the actual sugar content of vitamin water was

accurately stated in an FDA-mandated label on the product does not eliminate the possibility that

reasonable consumers may be misled." (citing *Williams*, 552 F.3d at 934)); *Hughes v. Ester C*

*Co.*, No. 12-0041, 2013 WL 1080533, at *17 (E.D.N.Y. Mar. 15, 2013) ("reasonable consumers

should [not] be expected to look beyond misleading representations on the front of the box to

discover the truth from the ingredient list in small print on the side of the box."); *Lynch v.*

*Tropicana Prods., Inc.*, No. 11-07382, 2013 WL 2645050, at *7 (D.N.J. June 12, 2013) (same);

*Henderson v. J.M. Smucker Co.*, No. 10-4524, 2011 WL 1050637, at *4 (C.D. Cal. Mar. 17,

2011) (same); *Stewart*, 2012 WL 4168584, at *9 ("the fact that the labels were literally true does

not mean that they cannot be misleading to the average consumer").

The Ninth Circuit squarely addressed this issue in *Williams*, holding:

> Reasonable consumers should [not] be expected to look beyond
> misleading representations on the front of the box to discover the
> truth from the ingredient list in small print on the side of the box.
> . . . We do not think that the FDA requires an ingredient list so that

18

> manufacturers can mislead consumers and then rely on the
> ingredient list to correct those misinterpretations and provide a
> shield for liability for the deception. Instead, reasonable consumers
> expect that the ingredient list contains more detailed information
> about the product that confirms other representations on the
> packaging.

*Williams*, 552 F.3d at 939-40.  Following *Williams*, the court in *Ackerman* stated that "[t]he same

holds true here" in holding that "the presence of a nutritional panel, though relevant, does not as

a matter of law extinguish the possibility that reasonable consumers could be misled by vitamin

water's labeling and marketing."  *Ackerman*, 2010 WL 2925955, at *16.  As was the case in

*Ackerman*, the same holds true here.  The same conduct that Plaintiffs allege herein was found to

be unlawful in *Stewart*, 2012 WL 4168584, at *9, and because "New York consumer protection

statutes are more broadly worded than those of New Jersey," a similar result is warranted here.

*See In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.*, 701 F.

Supp. 2d 356, 379 (E.D.N.Y. 2010) ("*Bayer*").

     As such, Defendants' statements that their products had no fat were material

misrepresentations, and their acts of placing and using these misleading statements on their milk

cartons are sufficient allegations of deceptive conduct.

### B. Plaintiffs Sufficiently Allege That They Have Suffered an Injury as a Result of Defendants' Deceptive Conduct

     Defendants claim that the allegations are insufficient to allege injury under New York

law.  Defendants are wrong.  The Complaint alleges that Plaintiffs paid a price premium for

Defendants' enhanced milks.  This is sufficient under New York's consumer protection law.

*See*, *e.g.*, *Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349

or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate

representations.") (citing *Jernow v. Wendy's Intern., Inc.*, No. 07-3971, 2007 WL 4116241, at *3

(S.D.N.Y. Nov. 15, 2007)); *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 483 (C.D. Cal. 2012) (where consumers allege that they paid a premium for the product based on marketing representations, they have adequately alleged injury under New York consumer protection law).

In *Jerno*w, the plaintiffs claimed that Wendy's deceived consumers regarding the content of its food by misrepresenting the amount of trans-fat in its food.  2007 WL 4116241, at *3-5. The plaintiffs alleged that Wendy's was able to charge a premium based upon these misrepresentations.  *Id.*  Defendant Wendy's argued this was insufficient to claim injury under GBL § 349.  The court rejected the argument and denied the motion to dismiss.  *Id.* ("Under New York law, a premium could constitute an actual injury compensable under Section 349").[14]

Defendants are unable to cite to a single case to support their argument that Plaintiffs' price premium allegations are insufficient.  Defendants simply argue without support that the Complaint's well-pled allegations of a price premium lack specificity.  This argument is not well-taken and borders on frivolous given the authority cited above that Defendants fail to address.[15]  In fact, just last month, the District of New Jersey held that identical allegations of a price premium stated a claim under New York law and also satisfied the heightened pleading requirements of Rule 9(b) under New Jersey law.  *See Lynch*, 2013 WL 2645050, at *7.[16]

---

[14] *See also Cox v. Microsoft Corp.*, 10 Misc. 3d 1055A, 809 N.Y.S.2d 480 (N.Y. Sup. Ct. 2005) (sufficient allegations of actual injury where plaintiffs alleged that Microsoft was able to charge inflated prices for its products as a result of its deceptive actions). *Sheppard v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-4362, 2012 WL 1890388, at *6 (S.D.N.Y. May 23, 2012), the only case cited by Defendants, is inapposite. *Sheppard* does not discuss allegations of plaintiffs paying a price premium, instead only addressing allegations of deception.  As Plaintiffs have pled deception with specificity sufficient to meet the heightened pleading requirements of Rule 9(b), *Sheppard* is irrelevant.

[15] Defendants are attempting to impose the heightened pleading standard of Fed. R. Civ. P. 9(b) (which Plaintiffs arguably comply with as well), whereas under New York law, "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice pleading requirements of Rule 8(a), Fed. R. Civ. P." *Pelman*, 396 F.3d at 511.

[16] Defendants do not independently challenge causation, nor could they.  Plaintiffs' allegation that they would not have purchased Enhanced Milks had they been accurately labeled, or that they paid a price premium because of the misleading claim, is sufficient to plead causation.  *See, e.g.*, *Waldman*, 714 F. Supp. 2d at 406.

Accordingly, Defendants' motion to dismiss Plaintiffs' GBL § 349 claim is without merit and must be denied.

## IV.     PLAINTIFFS ADEQUATELY ALLEGE BREACH OF WARRANTY CLAIMS

"A *prima facie* claim for breach of express warranty requires the plaintiff to show that there was an affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 604 (S.D.N.Y. 2010).  Plaintiffs have plainly satisfied this pleading standard.

Here, Plaintiffs allege that (i) Defendants expressly warranted that their "Fat Free" Enhanced Milks were in fact fat free; (ii) Defendants breached the express warranty on the label of, and/or in the advertising for, their "Fat Free" Enhanced Milks by providing milks containing 1 gram of fat per serving; (iii) Defendants made such express warranty knowing the purpose for which its "Fat Free" Enhanced Milks were to be used and advocating its use for such purpose; (iv) Defendants' "Fat Free" Enhanced Milks did not conform to the express warranty made by Defendants; and (v) Plaintiffs purchased Defendants' "Fat Free" Enhanced Milks based upon and in reliance upon such false warranty.  (Cplt. ¶¶ 84-89.)

This is a textbook breach of warranty.  *See, e.g.*, *Bayer*, 701 F. Supp. 2d at 384; *Stewart*, 2012 WL 4168584, at *13; *Moss v. Walgreen Co.*, 765 F. Supp. 2d 1363 (S.D. Fla. 2011).

In *Stewart*, the court sustained the plaintiffs' identical breach of warranty claim under New Jersey law holding:

> Plaintiffs state a claim for breach of express warranty because they sufficiently allege: (1) the Defendant makes a specific description that the product is "fat free"; (2) the description was the basis of the bargain for the product; and (3) the product ultimately did not conform to the description because it contained one gram of fat per serving.

*Stewart*, 2012 WL 4168584, at *12.  The *Bayer* decision is also on point.  In *Bayer*, the court

sustained the plaintiffs' breach of warranty claim where "Plaintiffs claim that the combination

products cannot fulfill the promises Bayer makes on their labeling." *Bayer*, 701 F. Supp. 2d at

384.  This logic applies equally well to the instant case, where the relevant facts are identical:

Defendants' products did not fulfill the promises Defendants made on their labeling.

     Defendants' arguments with respect to Plaintiffs' warranty claim are, in essence, the

same arguments made with respect to the GBL § 349 claim; that there is no misrepresentation

and no injury.  Like the GBL § 349 claims, Defendants' arguments should be made to a jury, and

they do not support a motion to dismiss.  *See Elias v. Ungar's Food Products, Inc.*, 252 F.R.D.

233, 251 (D.N.J. 2008) (certifying warranty claim based on statements relating to fat content).

## V.    DEFENDANTS WERE UNJUSTLY ENRICHED

     Defendants' arguments with respect to Plaintiffs' unjust enrichment claim is based on the

same reasons raised by Defendants in seeking dismissal of Plaintiffs' GBL § 349 claim and

breach of warranty claim.  As such, they similarly lack merit.

     "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish:

(1) defendant was enriched; (2) the enrichment was at plaintiff's expense; and (3) the

circumstances were such that equity and good conscience require defendant[ ] to make

restitution." *Hughes*, 2013 WL 1080533, at *24 (citation omitted).  With respect to the first

element, the Complaint easily establishes that the Defendant was enriched, because Plaintiffs and

other victims of Defendant's deception purchased the Products.   (Cplt. ¶¶ 9-10.)  The second

element is satisfied because Plaintiffs purchased the Products at their expense.  (*Id.*)  The third

element is also satisfied because, as the Complaint makes clear, Defendants profited by falsely

promising that the products were "fat free" when they were not and, thereby, inducing Plaintiffs

(and other victims) into buying the products.  (Cplt. ¶¶ 2-5, 25-27, 36-41, 49-59.)  As such,

Plaintiffs have stated a claim for unjust enrichment.

The *Bayer* court, in sustaining a nearly identical claim for unjust enrichment, held:

> [The] plaintiffs charge defendant with employing misleading statements about the virtues of the combination product to market them to consumers. Because of these misrepresentations, plaintiffs purchased the combination products and defendant retained those benefits. If the allegations in the Complaint are true, then defendant reaped a financial reward at plaintiffs' expense. This is sufficient to state a claim for unjust enrichment

*Bayer*, 701 F. Supp. 2d at 384.  The same rationale applies here.

## VI.   STATUTE OF LIMITATIONS FOR PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS SIX YEARS

Defendants contend that "while the limitations period for unjust enrichment is not always

consistently applied by New York courts, where courts provide the basis for their determination

regarding the appropriate statute of limitations for an unjust enrichment claim, they consistently

apply a three year limitation to tort claims and claims seeking monetary relief and a six-year

limitation to contract claims and claims seeking injunctive relief."  (Def. Mem. at 24.)

However, notwithstanding some inconsistency, it is clear that the statute of limitations for

an unjust enrichment claim under New York law is six years.  *See*, *e.g.*, *Golden Pac. Bancorp v.*

*F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001)  ("The statute of limitations in New York for claims

of unjust enrichment . . .  is generally six years."); *Coombs v. Jervier*, 74 A.D.3d 724, 906 (N.Y.

App. Div. 2010) (action to "recover damages" applying six-year statute of limitation); *Ferring*

*B.V. v. Allergan, Inc.*, No. 12-2650, 2013 WL 1144878 (S.D.N.Y. Mar. 19, 2013) ("The

limitations period for unjust enrichment claims is six years"); *Mahmood v. Research in Motion*

*Ltd.*, No. 11-5345 KBF, 2012 WL 242836 (S.D.N.Y. Jan. 24, 2012) ("claim for unjust

enrichment must be brought within six years of the date upon which the claim accrued.").

Defendants claim that when a case seeks monetary relief or sounds in tort that the statute of limitations is reduced from six years to three years.  Again, Defendants are wrong.

In *US Bank National Association v. Gestetner*, 103 A.D.3d 962 (N.Y. App. Div. 2013), the complaint sounded in tort, with the plaintiff alleging both fraud and conspiracy claims along with his unjust enrichment claim.  Nonetheless, the Appellate Division, Third Department, held that "[t]he limitations period for unjust enrichment claims is six years." *Id.* at 963.  Similarly, in *Schandler v. New York Life Insurance Co.*, No. 09-10463, 2011 WL 1642574 (S.D.N.Y. Apr. 26, 2011), the plaintiff asserted claims seeking monetary relief including "violation of N.Y. General Business Law, fraudulent misrepresentations, [and] fraudulent concealment," and the court held that the "statute of limitations in New York for a claim of unjust enrichment is six years." *Id*. Likewise, in *Samuel L. Hagan II, P.C. v. J.P. Morgan Chase Bank, N.A.*, 33 Misc. 3d 1211(A) (N.Y. Sup. Ct. 2011), an action "to recover monetary damages" that included causes of action for negligence and fraud, the New York Supreme Court held that "the statute of limitations for a cause of action for unjust enrichment is six years."  These are but a small sampling of New York State and Federal cases that disprove Defendants' strained theory.[17]

---

[17] *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Rabiner*, 749 F. Supp. 2d 94 (E.D.N.Y. 2010) (an insurer brought action asserting claims for fraud and unjust enrichment and the court held that "the statute of limitations for a fraud or unjust enrichment claim is six (6) years in New York."); *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009) (the plaintiff alleged common law false advertising, false and deceptive practice, and unjust enrichment, arising out of retailer's use of a "price match guarantee" policy and the court held that "in New York, the statute of limitations for an unjust enrichment claim is 6 years."); *Niagara Mohawk Power Corp. v. Freed*, 265 A.D.2d 938 (N.Y. App. Div. 1999) (where the plaintiff asserted claims for fraud, commercial bribery, breach of fiduciary duty, breach of contract, unjust enrichment, and under Racketeer Influenced and Corrupt Organizations Act (RICO), and "Plaintiff set forth sufficient factual allegations of defendants' affirmative acts of deception," court held the statute of limitations for the plaintiff's unjust enrichment claim was six years.); *St. Paul Travelers Ins. Co. v. Nandi*, 15 Misc. 3d 1145(A) (N.Y. Sup. Ct. 2007) (action to recover damages for fraud and unjust enrichment holding "[t]he statute of limitations for unjust enrichment is six years."); *Serdarevic v. Advanced Med. Optics, Inc.*, No. 06-7107, 2007 WL 2774177 (S.D.N.Y. Sept. 25, 2007), *aff'd*, 532 F.3d 1352 (Fed. Cir. 2008) (action for fraud and unjust enrichment holding that "the statute of limitations for unjust enrichment claims is six years."); *Escava v. Escava*, 9 Misc. 3d 1101(A) (N.Y. Sup. Ct. 2005) ("The plaintiffs' cause of action to recover damages for unjust enrichment is barred by the six-year Statute of Limitations.").

As such, the alleged class period as it pertains to Plaintiffs' unjust enrichment claim falls within the applicable statute of limitations.[18]

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss and grant Plaintiffs such other and further relief as this Court deems just and proper.

Dated:      July 10, 2013
            White Plains, New York


                                        **MEISELMAN, PACKMAN, NEALON
                                        SCIALABBA & BAKER P.C.**


                          By:     */s/ Todd S. Garber*
                                  Todd S. Garber
                                  D. Greg Blankinship
                                  Jeremiah Frei-Pearson
                                  1311 Mamaroneck Avenue
                                  White Plains, New York 10605
                                  (914) 517-5000

                                  **REESE RICHMAN LLP**
                                  Michael R. Reese
                                  Kim E. Richman
                                  Jason C. Hardy
                                  875 Avenue of the Americas, 18th Floor
                                  New York, New York 10001
                                  Telephone: (212) 643-0500
                                  Facsimile:  (212) 253-4272

                                  *Attorneys for Plaintiffs and the Class*

---

[18] To the extent that the cases cited by Defendants hold to the contrary, they are in conflict with the majority of cases that have addressed this issue including Appellate Divisions from the Second, Third, and Fourth Department as cited herein.  Further, *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007) does not save Defendants. *Malmsteen* states: "A claim of unjust enrichment is governed by a six-year statute of limitations under New York's residual limitations period statute."  *Id.* at 667.

25