UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

PHILIP KOENIG and ENRICO LUONGO,  :
on behalf of themselves and all others  :
similarly situated,  :
                  :

            Plaintiffs,  :

                  :

    - against -  :

                  :

BOULDER BRANDS, INC. and GFA BRANDS, INC.,  :

                  :

            Defendants.  :

------------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#
DATE FILED: 1/31/14

**<u>OPINION AND ORDER</u>**
13-CV-1186 (ER)

Ramos, D.J.:

This putative class action arises from Plaintiffs' allegations that Boulder Brands, Inc. ("Boulder") and GFA Brands, Inc. ("GFA") (collectively, the "Defendants") deceptively labeled as "fat free" certain milk products that—due to the addition of an omega-3 oil blend—in fact contained one gram of fat per serving.  Plaintiffs bring three claims under New York State law: (1) violation of General Business Law ("GBL") § 349; (2) breach of express warranty; and (3) unjust enrichment.  Complaint ("Compl."), Doc. 1.

Currently before the Court is Defendants' motion to dismiss the Complaint.  Doc. 12. For the reasons set forth below, Defendants' motion is GRANTED in part and DENIED in part.

**I.    Factual Background**

Unless otherwise noted, the following facts are taken from the allegations in the Complaint, which the Court accepts as true for purposes of this motion.  *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010).

**a.   The Parties**

Defendants are Delaware corporations with principal places of business and corporate headquarters in New Jersey.  Compl. ¶¶ 11-12.  Defendant Boulder is a consumer food products

company that markets and sells "fat free" milks under the Smart Balance trademark in New York.  *Id.*  Defendant GFA is a wholly-owned operating subsidiary of Boulder that, likewise, markets and sells Smart Balance "fat free" milks in New York.  In addition to milk, the products at issue contain an omega-3 oil blend.  *Id.* ¶¶ 1, 39.  These products include:  (1) Smart Balance "Fat Free Milk and Omega-3s," (2) Smart Balance "Lactose-Free Fat Free Milk and Omega-3s," and (3) Smart Balance "HeartRight® Fat Free Milk and Omega-3s & Natural Plant Sterols" (collectively referenced herein as "Smart Balance").  *Id.* ¶ 1 n.1.  The Smart Balance milks contain one gram of fat per serving, but the source of the fat is the omega-3 oil blend, not milkfat.  *Id.* ¶¶ 50, 59.

Plaintiffs Philip Koenig and Enrico Luongo are New York residents who allegedly purchased Smart Balance starting in 2009.  Mr. Koenig allegedly bought Defendants' "Fat Free Milk and Omega-3s," whereas Mr. Luongo purchased Defendants' "Lactose-Free Fat Free Milk and Omega-3s."  *Id.* ¶¶ 9, 10.  Plaintiffs claim to have paid price premiums for both products.  *Id.* ¶¶ 7, 9-10, 81.  Plaintiffs seek to represent a class of New York consumers who purchased Smart Balance between 2008 and September 2012 (the "Class Period"), a period that spans from the time Defendants began marketing Smart Balance to the time Defendants changed Smart Balance labels.  *Id.* ¶¶ 1 n.1, 8, 75.[1]

### b.  The Product Packaging

Plaintiffs primarily base their claims on the content and appearance of the Smart Balance cartons.  Compl. ¶¶ 49-59; Product labels, Ex. A-C to Mot. Dismiss, Doc. 15.[2]  Each carton

---

[1] Plaintiffs allege that in September 2012, Defendants "changed their formulation" of Smart Balance to "eliminate the [one] gram of fat per serving" and as a response to litigation filed against them in 2011.  Compl.  ¶ 8.

[2] While the Complaint, at ¶¶ 49-59, includes images and detailed descriptions of the Smart Balance product labels, because the Court finds it easier to read the color copies of the product labels, provided by Defendants as Exhibits A-C to their motion, it will refer to these versions of the product labels in lieu of citations to the Complaint.

includes four panels:  (1) a front label panel; (2) a nutrition facts side panel; (3) a side panel that states "Smart Balance Milks – Great taste and good health…together at last!" and that advertises other Smart Balance milk products; and (4) a back panel with a "HEALTH FACTS" text box, which describes each product as "real fat free milk" or "real lactose-free milk" and "important nutrients," then lists, in sub-bullets below, the following attributes:  "heart healthy DHA/EPA Omega-3s," 20-25% more calcium and protein than whole milk and "good source of potassium." Product labels, Ex. A-C to Mot. Dismiss.  The phrase "tastes rich & creamy like 2% milk" appears under the spout at the top of each carton.  *Id.*  In addition, one side panel of each carton includes the statement:  "now you don't have to choose between the full, creamy taste of 2% milk and the health benefits of fat free."  *Id.*

Plaintiffs allege that in total, each Smart Balance carton uses the term "fat free" nine times, and that "[t]hese statements were false, and intentionally confusing and misleading" because the products contained one gram of fat per serving. Compl. ¶¶ 57-59.  Plaintiffs appear to acknowledge that each carton discloses that the product contains one gram of fat per serving in two places:  the front label panel and the nutrition facts panel.  *Id.* ¶¶ 50, 59; Product labels, Ex. A-C to Mot. Dismiss.

### i.  Front Label Panel

The top third of each product's front panel features the yellow Smart Balance logo, and is the most prominent part of each front panel.  The middle third features the specific name of the product offset by a different background color, and includes the phrase "(1g Fat from Omega-3 Oil Blend)," which appears in small white text underneath the product name.  The bottom third depicts a splash of white milk covered by a ribbon of text advertising that the product "Tastes Rich & Creamy Like 2% Milk" and has 20-25% more calcium and protein than whole milk.  The

phrase "(1g Fat from Omega-3 Oil Blend)" is less prominent than all of the other text on the front panel, which is larger, bolder, or capitalized.  Product Labels, Ex. A-C to Mot. Dismiss.

### ii.  Nutrition Facts Panel

For each of the Smart Balance milks, the nutrition facts panel specifies a serving size of one cup, with a total fat content of one gram per serving, zero grams of saturated fat, and zero grams of trans fat.  The total calorie content for one serving is 110 calories, ten of which are from fat.  The first three ingredients in each product's ingredient list are:  "Grade A Fat Free Milk," "Nonfat Milk Solids," and "Omega-3 Oil Blend (Purified Fish Oil And Sunflower Oil – To Help Maintain Freshness)."  The cartons do not include any asterisk or disclaimer modifying the omega-3 oil blend listing on the ingredient list.  Product Labels, Ex. A-C to Mot. Dismiss.

### c.  Website Claims

Plaintiffs also allege that Defendants "misleadingly marketed" Smart Balance as "fat free" on their website.  Compl. ¶¶ 48-50.  Plaintiffs represent that Defendants promoted each of the Smart Balance milks on their website as follows:

- "**Smart Balance Fat Free Milk and Omega-3s**:  The fat free milk that tastes as rich and creamy as 2% and contains EPA/DHA Omega-3s and 25% more calcium and protein than whole milk."

- "**Smart Balance HeartRight Fat Free Milk**:  Try 2 servings a day of our fat free milk with the rich, creamy taste of 2% and naturally sourced ingredients proven to help lower cholesterol as part of a diet low in saturated fat and cholesterol."

- "**Smart Balance Lactose-Free Fat Free Milk and Omega-3s**:  Lactose-free, fat free milk that tastes as rich and creamy as 2%, with 20% more calcium and protein than whole milk and the benefits of Omega-3s."

Compl. ¶ 49.

4

### d.  Regulatory Context

#### i.  The FDCA and NLEA

The Federal Food, Drug, and Cosmetic Act ("FDCA"), passed by Congress in 1938,

grants the Food and Drug Administration ("FDA") power to ensure "foods are safe, wholesome,

sanitary, and properly labeled."  21 U.S.C. § 393(b)(2)(A); Mot. Dismiss at 5 (citing *Ackerman v.*

*Coca-Cola Co.*, No. 09 Civ. 0395 (JG) (RML), 2010 WL 2925955, at *2 (E.D.N.Y. July 21,

2010)).[3]  In 1990, Congress amended the FDCA with the Nutrition Labeling and Education Act

("NLEA"), which sought "to clarify and to strengthen the Food and Drug Administration's legal

authority to require nutrition labeling on foods, and to establish the circumstances under which

claims may be made about nutrients in foods."  *N.Y. State Restaurant Ass'n v. New York City Bd.*

*of Health*, 556 F.3d 114, 118 (2d Cir. 2009); Pub. L. No. 101–535, 104 Stat. 2353 (1990)

(codified at 21 U.S.C. § 343, *et seq.*).  These statutes do not provide for a private right of action.

*See* 21 U.S.C.A. § 337 (all proceedings "for the enforcement, or to restrain violations, of this

chapter shall be by and in the name of the United States" or, under limited circumstances,

brought by a state); *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 810 (1986).

The FDCA expressly forbids the misbranding of food in interstate commerce.  21 U.S.C.

§ 331(a)-(c), (k).  Section 343 of the FDCA sets forth circumstances under which food is

considered "misbranded."  21 U.S.C. § 343.  In general, a food is "misbranded" if "any

particular" of its labeling is "false or misleading."  21 U.S.C. § 343(a)(1).  Section 343(q), titled

"[n]utrition information," addresses the information about nutrients in a food that *must* be

disclosed to the public to ensure that a product is properly branded, such as total calories and

---

[3] For the purposes of the FDCA, "food" includes any "article[] used for food or drink for [a] [hu]man…and articles used for components of any such article."  21 U.S.C. § 321(f).

serving size, which appear on the "nutrition facts" panel on packaged foods.  *N.Y. State Restaurant Ass'n*, 556 F.3d at 118 (citing 21 U.S.C. § 343(q)(1)).

Section 343(r) governs *optional* information about nutrition, that is, those claims that a food purveyor may *choose* to make about the nutrient content of its product.  *Id.* at 118-19; 21 U.S.C. § 343(r).  A nutrient content claim is a direct expression about the specific concentration of a nutrient in a food, for example, "low sodium" or "contains 100 calories."  *See* 21 C.F.R. § 101.13(b)(1).  If a food producer chooses to include a nutrient content claim on a food label, it must comply with the applicable regulations promulgated by the FDA.  21 U.S.C. § 343(r)(1)-(2).  Of particular relevance here, the FDA has issued regulations that define the specific requirements that food products, including milk products, must meet in order to support a nutrient content claim of being "fat free":

> The terms "fat free," "free of fat," "no fat," "zero fat," "without fat," "negligible source of fat," or "dietarily insignificant source of fat," or, in the case of milk, "skim" may be used on the label or in labeling of foods, provided that:
>
> (i)      The food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving … ; and
>
> (ii)     The food contains no added ingredient that is a fat or is generally understood by consumers to contain fat *unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of fat," "adds a negligible amount of fat," or "adds a dietarily insignificant amount of fat*;" and
>
> (iii)    As required in § 101.13(e)(2), if the food meets these conditions without the benefit of special processing, alteration, formulation, or reformulation to lower fat content, it is labeled to disclose that fat is not usually present in the food (e.g., "broccoli, a fat free food").

*See* 21 C.F.R. § 101.62(b) ("[n]utrient content claims for fat, fatty acid, and cholesterol content of foods") (emphasis added).

### ii.  Regulations Applicable to Milk

Federal regulations also specifically provide a standard for what products may be labeled and sold as milk.[4]  The FDCA requires that all foods, including milk, display standardized names on their labels that accurately represent their identity, or else they may be deemed misbranded. 21 U.S.C. § 343(g).  A food may also be deemed misbranded under the FDCA unless its label bears its "common or usual name," to the extent that it has one.  21 U.S.C. § 343(i)(1).  Thus, if a product claims to be "milk," then it must (1) comply with the regulatory requirements for "milk," in terms of ingredients and composition, and (2) be labeled "milk."  21 U.S.C. § 343(g).

While the regulations provide a standard identity for whole milk, they also permit the dairy industry to produce and market four types of milk with different levels of fat:  whole milk, with 8 grams of fat per serving; 2% reduced fat milk, with 5 grams of fat per serving; 1% or "low fat" milk with 3 grams of fat per serving; and skim or nonfat milk, with less than 0.5 grams of fat per serving.  21 C.F.R. § 130.10; Mot. Dismiss at 6-7; Opp. Mot. Dismiss at 6.  The parties agree that to qualify as "fat free," milk must contain less than 0.5 grams of fat per serving, and must comply with 21 C.F.R. § 101.62(b), which concerns nutrient content claims for fat.  Mot. Dismiss at 6; Opp. Mot. Dismiss at 6.

### iii.  NLEA Express Preemption Clause

Consistent with the statute's purpose of promoting uniform national labeling standards, the NLEA includes an express preemption provision that forbids the states from "directly or indirectly establish[ing]…any requirement…made in the labeling of food that is not identical to"

---

[4] Milk is "the lacteal secretion, practically free from colostrum, obtained by the complete milking of one or more healthy cows."  21 C.F.R. § 131.110.  The regulations set forth a "standard of identity," or recipe, for the components of milk:  to qualify as milk, a product must contain a minimum combination of "8 ¼ percent milk solids not fat and … 3 ¼ percent milkfat."  *Id.*  In addition, "[m]ilk may have been adjusted by separating part of the milkfat therefrom, or by adding thereto cream, concentrated milk, dry whole milk, skim milk, concentrated skim milk, or nonfat dry milk."  *Id.*

the federal labeling requirements established by certain specifically enumerated sections of the FDCA. 21 U.S.C § 343–1(a). Relevant here, the NLEA preemption provision requires food producers to comply with the FDA's definitions set forth in 21 C.F.R. § 101.13 ("[n]utrient content claims—general principles") and 21 C.F.R. § 101.62 ("[n]utrient content claims for fat, fatty acid, and cholesterol content of foods"). 21 U.S.C § 343–1(a)(5). The NLEA's express preemption provision also applies to section 343(b), which prohibits the sale of a food under another name; section 343(g), which requires that foods comply with their standards of identity, to the extent that the regulations define them; and section 343(i), which requires foods to be labeled using their common or standardized names. 21 U.S.C § 343–1(a)(1)-(3).

The effect of the NLEA's preemption provision is to ensure that the states only enact food labeling requirements that are equivalent to, and consistent with, the federal food labeling requirements for certain products, including milk. State laws that impose affirmatively different labeling requirements from federal law in these areas will be preempted. Contrariwise, state laws that seek to impose labeling requirements identical to those required by federal regulations will not be preempted. *See, e.g.*, *In re Pepsico, Inc.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008).

### iv. State Regulatory Scheme

New York law forbids the misbranding of food "in language largely identical to that found in the FDCA." *Ackerman*, 2010 WL 2925955, at *4. New York's Agriculture and Marketing law incorporates the FDCA's labeling provisions and, likewise, provides that food shall be deemed misbranded "[i]f its labeling is false or misleading in any particular." *Id.*; N.Y. Agric. & Mkts. Law § 201 (McKinney). New York law also provides remedies, including private rights of action, for misbranding food under consumer protection laws, such as GBL §

349, which broadly prohibits use of "deceptive acts or practices" in business dealings in New York. *Ackerman*, 2010 WL 2925955, at *4; GBL § 349.

### v.  FDA Compliance Policy Guides

Under certain circumstances, federal regulations permit food producers and other interested parties to request advisory opinions from the FDA concerning how particular food products may be labeled, and in response, the FDA may issue statements of policy or interpretation. 21 C.F.R. § 10.85.  The regulations explicitly state that certain statements of policy or interpretation, including statements known as Compliance Policy Guides, constitute advisory opinions. 21 C.F.R. § 10.85(d)(3).  The regulations further provide that "[a]n advisory opinion may be used in administrative or court proceedings to illustrate acceptable and unacceptable procedures or standards, but not as a legal requirement." 21 C.F.R. § 10.85(j).

Defendants argue that, in addition to federal statutes and regulations, FDA Compliance Policy Guides pertaining to so-called "combination products" govern how Smart Balance must be labeled. Mot. Dismiss at 7-8.  A "combination product" combines two individual food components in a single package.  According to Defendants, the name of a "combination product" must (1) include the standardized or common names of both component foods, and (2) join the names of the component foods using the words "and" or "with."   Examples of "combination products" include "purified water with added minerals" and "peas and carrots."  *Id.* at 7.

Defendants claim, and Plaintiffs dispute, that applicable federal statutes, regulations and policies allow them to create a combination product that contains, in one package, "a 'fat free milk' component having less than 0.5 grams of fat per serving and another component that is not 'fat free' provided that the combination product is identified by both names and connected by the word 'and' or 'with.'" Mot. Dismiss at 8.  In support of their position, Defendants rely upon

guidance issued by the FDA for peas and carrots (Compliance Policy Guide § 585.600, Peas and

Carrots, Labeling of Canned Mixture (CPG 7114.16)), a "final rule" for "Beverages:  Bottled

Water" involving water with added minerals (60 Fed. Reg. 57076 (Nov. 13, 1995)), and

guidance for jellies (Compliance Policy Guide § 550.475, Jellies, Nonstandardized (CPG

7110.14)).  Mot. Dismiss at 7-8.  These sources do not specifically discuss or address milk

products.

### e.  Plaintiffs' Claims

While Plaintiffs claim that Defendants violated federal requirements for use of the term

"fat free" on food labeling, they do not seek relief under federal law; rather, they argue that, in

failing to comply with federal statutes and regulations, Defendants also violated state laws.  On

behalf of themselves and the putative class, Plaintiffs bring three New York state law causes of

action:  (1) violation of GBL § 349; (2) breach of warranty; and (3) unjust enrichment.  Compl. ¶

6.  Plaintiffs claim that in failing to abide by the FDCA, "Defendants misled Plaintiffs in

violation of [GBL] § 349 and in breach of their warranties, resulting in Defendants' unjust

enrichment."  *Id.*  While Plaintiffs only seek relief under state law, they represent that their

claims "mirror the federal requirements."  *Id.* ¶¶ 6, 22.

The gravamen of Plaintiffs' complaint is that the Smart Balance milks are not, in

actuality, "fat free" because the presence of the omega-3 oil blend raises their fat content to one

gram per serving, which exceeds the amount permitted by federal regulations for products that

may be labeled "fat free."  *Id.* ¶ 37 (citing 21 C.F.R. § 101.62(b)).  Plaintiffs point to "at least

one of Defendants' competitors," Horizon Organic Fat Free Milk with DHA Omega-3s, that

marketed and sold fat free milk with omega-3 oil "that was indeed fat free and appropriately

labeled its addition of oil with the appropriate asterisk…in compliance with 21 C.F.R. §

101.62(b)."  *Id.*  ¶¶ 60-64.  According to Plaintiffs, during the Class Period, Smart Balance was the only product on the market labeled "fat free" that contained more than 0.5 grams of fat per serving.[5]  *Id.* ¶ 67.

Plaintiffs claim that Defendants' misrepresentations with respect to the fat content of Smart Balance caused them to suffer economic loss in the form of the price paid for the products, including price premiums.  *Id.* ¶¶ 78-81.

## II. Discussion

### a. Legal Standard

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all of the factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.  *Famous Horse Inc.*, 624 F.3d at 108.  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory statements.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'"  *Id.* (citing *Twombly*, 550 U.S. at 570).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are merely consistent with a defendant's

---

[5] Plaintiffs allege that "the market is saturated with products which use the term 'fat free' that add an ingredient that is a fat or is generally understood by consumers to contain fat, yet actually comply with the labeling requirements of 21 C.F.R. § 101.62, and unlike [Smart Balance], comply with state law."  Compl. ¶ 66.  In addition to the example of the Horizon product, the Complaint includes images, including the nutrition labels, of the following "fat free" dairy products that contain "trivial" amounts of added fat:  Hood Fat Free Half & Half; Bailey's Fat Free Irish Cream Coffee Creamer; Heluva Good! Fat-Free French Onion Dip; Penn Maid Fat Free Half & Half; Hood Calorie Countdown Fat Free Dairy Beverage; Darigold Fat Free Sour Cream; Anderson Erickson Fat Free Sour Cream; Cabot No Fat Cottage Cheese; and Naturally Yours Fat Free Sour Cream.  *Id.*

11

liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

### b.  Defendants' Motion to Dismiss

Defendants argue that the Complaint should be dismissed on three grounds:  (1) that federal law preempts Plaintiffs' claims; (2) that Plaintiffs fail to sufficiently plead their claims; and (3) that the relevant statutes of limitations bar certain of Plaintiffs' claims.  *See generally* Mot. Dismiss.

### i.  Preemption

Under the Supremacy Clause of the Constitution, state laws are invalid if they "interfere with, or are contrary to the laws of Congress, made in pursuance of the constitution."  *Gibbons v. Ogden*, 22 U.S. 1, 211, 6 L. Ed. 23 (1824).  Federal law can preempt state law if Congress expresses its intent to preempt the law through explicit statutory language ("express preemption") or, in the absence of explicit statutory language, if the state law regulates conduct in a field that Congress intended the federal government to occupy exclusively ("field preemption") or directly conflicts with federal law ("conflict preemption").  *See N.Y. Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S. Ct. 1671, 131 L. Ed. 2d 695 (1995); *Green Mountain R.R. Corp. v. Vermont*, 404 F.3d 638, 641 (2d Cir. 2005). Here, only express preemption is at issue.

As articulated by the Supreme Court, "[t]he purpose of Congress is the ultimate touchstone in every pre-emption case."  *Wyeth v. Levine*, 555 U.S. 555, 565, 129 S. Ct. 1187, 1194-95, 173 L. Ed. 2d 51 (2009) (internal citations and quotation marks omitted); *see also N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010) (citation omitted). When Congress has considered the issue of preemption and explicitly enacts legislation that

includes a pre-emption clause, the implication is that matters outside of the preemption clause's reach are not preempted.  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 517, 112 S. Ct. 2608, 2618, 120 L. Ed. 2d 407 (1992).  Such is the case here.  As noted by the Second Circuit, "[h]elpfully, the NLEA is clear on preemption, stating that it shall not be construed to preempt any other provision of State law, unless such provision is *expressly preempted* under [21 U.S.C. § 343-1(a)] of the [FDCA]."  *N.Y. State Restaurant Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (citation omitted) (emphasis in original).

The express preemption provision of the NLEA does not preempt state law claims that impose requirements "identical to" federal food labeling requirements.  21 U.S.C § 343–1(a).  Rather, the NLEA's preemption clause bars the states from imposing affirmatively different requirements that are not equivalent to, or fully consistent with, the labeling and packaging provisions of the FDCA specifically identified in the preemption clause.  21 U.S.C § 343–1(a); *see also In re Pepsico, Inc.*, 588 F. Supp. 2d at 532.  In addition, "state law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action."  *In re Pepsico, Inc.*, 588 F. Supp. 2d at 532; *Ackerman*, 2010 WL 2925955, at *6 (citing *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 432 (2005)).

Thus, the question before the Court is whether Plaintiffs' claims impose requirements for food labeling identical to, or different from, those of federal law.  As a threshold matter, the parties dispute which federal requirements apply to their food labels because they disagree regarding how Smart Balance should be classified.  Plaintiffs note that 21 C.F.R. § 101.62(b) addresses the precise situation at hand here:  the addition of an ingredient that is a fat—the omega-3 oil blend—to a "fat free" food.  Opp. Mot. Dismiss at 11-12.  Thus, Plaintiffs maintain

that their claims are not preempted because they seek to impose requirements identical to those of federal law for fat content claims.

In accordance with that regulation, Plaintiffs assert that in order to label its product "fat free," defendants were required to state that the addition of the omega-3 oil added only a "trivial" amount of fat.  Because Defendants could not accurately so state, the product could not be labeled "fat free."  Plaintiffs contend that 21 C.F.R. § 101.62(b) does not exempt "combination products" and "no authority…permits [Defendants] to add fat back into fat free milk to the point where the resulting product contains more than 0.5 grams of fat per serving and yet still call the product 'fat free milk.'"  Opp. Mot. Dismiss at 6; *see also id.* at 13, 15.

In opposition, Defendants argue that Smart Balance must be classified as a "combination product," and not just milk, because it contains fat from omega-3 oil, a non-milk source.  Defendants emphasize that "the omega-3 oil blend is not an '*added ingredient*' that is a fat" because federal milk regulations governing the standard of identity for milk, as well as the Filled Milk Act, prohibit the addition of non-dairy fats to milk; therefore, they argue, Smart Balance must be viewed as a multicomponent food consisting of omega-3 oil and fat free milk.  Reply Supp. Mot. Dismiss at 4-5 (emphasis in original).  Defendants also argue that, because the federal standards of identity define milk based upon the amount of milk solids relative to milkfat, they cannot label Smart Balance "low fat" because "low fat" milk must contain more than 0.5 grams of *milkfat*.  Mot. Dismiss at 13-14.

Defendants further argue, based upon their interpretation of FDA Compliance Policy Guides for "combination products" such as water with added minerals, that federal law does *not* require the entirety of a "combination product" to have less than 0.5 grams of fat per serving in order for the product to use the words "fat free" in its name.  Rather, each individual component

14

of a "combination product" need only satisfy the applicable labeling requirements for that component.  Reply Supp. Mot. Dismiss at 1.  Thus, Defendants argue, Smart Balance complied with all relevant FDA requirements because (1) the "fat free milk" component complied with the requirements for "fat free milk," and (2) the names of the Smart Balance milks "clearly disclosed the presence of the omega-3 oil blend," in compliance with sections 343(g) and (i) of the FDCA.  Mot. Dismiss at 10.  Thus, Defendants claim that Plaintiffs' causes of action are expressly preempted because they require something more or different than the federal requirements applicable to "combination products."  *Id.* at 9.

The Court concludes that Plaintiffs' claims are not preempted irrespective of which regulations apply to the products at issue.  As an initial matter, Plaintiffs' claims explicitly track the requirements imposed by federal law for fat content claims.  Plaintiffs merely seek damages from Defendants under state law for their alleged failure to comply with the labeling requirements of 21 C.F.R. § 101.62(b).  Compl. ¶¶ 4, 37-41; *Ackerman*, 2010 WL 2925955, at *6.  Nothing in the language of the FDCA, NLEA, or related regulations expressly preempts state law claims for deceptive practices, breach of express warranty, or unjust enrichment premised upon an alleged failure to follow federal food labeling requirements.  Particularly because the NLEA's preemption provision allows state law claims that impose requirements identical to federal food labeling law, the Court finds that Plaintiffs' claims are not preempted.  *See, e.g.*, *Ackerman*, 2010 WL 2925955, at *6; *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011).

In addition, with respect to Plaintiffs' breach of express warranty claims, the Supreme Court has held that breach of warranty claims do not impose an additional "requirement" under state law, because the duty to honor a promise voluntarily undertaken cannot "fairly be said to be

15

'imposed under state law,' but rather is best understood as undertaken by the manufacturer itself." *Ackerman*, 2010 WL 2925955, at *24 (citing *Bates*, 544 U.S. 431 at 444-45; *Cipollone*, 505 U.S. at 526).  While it is also true, as Defendants note, that a breach of warranty claim based on language mandated by federal regulations would be preempted, here, the essence of Plaintiffs' complaint is that Defendants used language that was *not* approved by the FDA, as it failed to conform with the requirements of 21 C.F.R. § 101.62(b).  Reply Supp. Mot. Dismiss at 6; *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 285 (E.D.N.Y. 2009) ("Plaintiff's breach of express warranty claim is preempted to the extent that it is premised on FDA approved representations made by the manufacturer.") (citing *Lake v. Kardjian*, 22 Misc. 3d 960, 874 N.Y.S.2d 751, 754 (N.Y. Sup. Ct. 2008)).  Thus, Plaintiffs' breach of warranty claims are not preempted.  *Stewart v. Smart Balance, Inc.*, No. 11 Civ. 6174 (JLL), 2012 WL 4168584, at *6 (D.N.J. Jun. 26, 2012) (citing *Ackerman*, 2010 WL 2925955, at *7); *N.Y. State Conf. of Blue Cross & Blue Shield*, 514 U.S. at 654-55.

Defendants' authority in support of their preemption arguments do not compel a different conclusion for several reasons.  First, Defendants' "combination products" theory of preemption is untenable to the extent that it is based on FDA Compliance Policy Guides (*see* Mot. Dismiss at 10-11, 12 n.3), which constitute advisory opinions.  21 C.F.R. § 10.85.  An advisory opinion "may be used in administrative or court proceedings to illustrate acceptable and unacceptable procedures or standards, but not as a legal requirement." *Professionals & Patients for Customized Care v. Shalala*, 56 F.3d 592, 596 (5th Cir. 1995) (citing 21 C.F.R. § 10.85(j)).  As it is non-binding guidance, the FDA's Compliance Policy Guide "is not entitled to preemptive effect." *In re Frito-Lay North Amer., Inc. All Natural Litig.*, No. 12 MD 2413 (RRM) (RLM), 2013 WL 4647512, at *10 (E.D.N.Y. 2013) (citing, *e.g.*, *Holk v. Snapple Beverage Corp.*, 575

16

F.3d 329, 342 (3d Cir. 2009)); *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d

406, 411-13 (S.D.N.Y. 2011) (finding that certain documents issued by the FDA, including a

Compliance Policy Guide regarding methyl mercury content in seafood, did not create a

"pervasive federal regulatory scheme" concerning the allowable methyl mercury content in tuna

sufficient to preempt state law).

       In this regard, the Court finds persuasive the district court's decision in *Stewart v. Smart*

*Balance, Inc.*, which involved one of the same products at issue here,[6] the same Defendants, and

substantially similar claims for violation of a consumer fraud statute and breach of express

warranty brought under New Jersey law.  *See* 2012 WL 4168584.  As they do here, in *Stewart*,

Defendants argued that federal law preempted the plaintiffs' putative class action claims because

Defendants followed the FDA Compliance Policy Guides for multicomponent foods.  The

Honorable Judge Linares rejected Defendants' arguments because "Defendants [did] not point to

any regulations or policy regarding multicomponent products specifically applicable to milk, and

none of the policy guidelines or regulations specifically deal[t] with the type of products at

issue."  *Id.* at *6.  So too here, Defendants have not cited any FDA policy or guidance that

directly addresses the milk products at issue—or indeed, *any* guidance related to fat free claims

involving a "combination product."

       Defendants argue that Judge Linares's decision is flawed because express preemption

does not require a single regulation governing the product at issue.  Mot. Dismiss at 14-16.

Defendants claim that, because the FDA cannot be expected to opine with respect to every

variety of food, "all relevant statutory provisions, regulations, and policy statements" must be

---

[6] The plaintiffs in *Stewart* allegedly purchased the "Fat Free Milk and Omega-3s," and sought to represent a class of
consumers who purchased any of the three Smart Balance milks.

analyzed and applied to determine what is permitted under the circumstances.  Mot. Dismiss at 16.  Defendants' criticism misses the mark because the FDA's advisory policy statements and guidance are not amenable to generalization across the multitudinous variety of food products. Because questions from manufacturers concerning specific products often serve as the impetus for the FDA to issue Compliance Policy Guides,[7] the Court finds no basis to infer that the FDA intended these forms of guidance to apply to products other than those identified by name.

Moreover, the products addressed in the guidance cited by Defendants—bottled water, peas and carrots, and jellies—do not involve the combination of an ingredient that is a fat with a "fat free" food, a combination that the federal regulations specifically address elsewhere, at 21 C.F.R. § 101.62(b).  While the Court acknowledges that the concept of adding minerals to purified water parallels the idea of adding omega-3 oils to fat free milk, that guidance does not opine on the FDA regulations concerning fat content claims.  Accordingly, Defendants' comparison between Smart Balance and bottled water with added minerals is unpersuasive. Thus, as in *Stewart*, the Court finds that the FDA policy and guidelines pertaining to multicomponent foods provide no basis on which to preempt Plaintiffs' claims.

---

[7] For example, the FDA advisory opinion on "bottled water" cited by Defendants was created based upon more than 430 comments received by the FDA from trade and retail associations, retailers, manufacturers, consumers and consumer groups, health care professionals, professional societies, government organizations, State groups, the U.S. Congress, and universities in response to the FDA's proposal for the standard identity of bottled water.  One excerpt cited by Defendants provides, in part, that:

> FDA advises that water from a community water system that has been treated to meet the definition of "purified water" in §165.110(a)(2)(iv), and is labeled as "purified water" or one of its alternative names, is exempt from the labeling requirements of §165.110(a)(3)(ii).  Water with minerals added for taste is considered a multi-component food, and the labeling "from a municipal source" describes only the water ingredient.  Thus, if minerals are added to purified water for taste, and the label states that the product is "purified water (or any of its alternative names) with minerals added for taste," the product is exempt from §165.110(a)(3)(ii) because the water ingredient meets the criteria for the exemption.

Beverages: Bottled Water, 60 Fed. Reg. 57076-01, 57104 (Nov. 13, 1995).

Finally, Defendants argue that naming Smart Balance "low fat milk," instead of using the nomenclature for a combination food (fat free milk *and* or *with* omega-3 oil), would violate the standard identity of milk and the Filled Milk Act of 1923, which prohibits producers from selling, in interstate commerce, any milk to which any fat or oil, other than milk fat, has been added.[8]  Mot. Dismiss at 14; Reply Supp. Mot. Dismiss at 6-7.  This argument is unconvincing. As explained by a lesser-known footnote in *United States v. Carolene Products Co.*, the Filled Milk Act targeted the once widespread practice of substituting vegetable or coconut oil for butter fat in milk, which enabled producers to manufacture and sell their products at a lower cost than pure milk, but jeopardized consumer health.  304 U.S. 144, 149 n.2 (1938).  The parties appear to acknowledge, however, that Horizon manufactured a product called "Organic Fat-Free Milk with DHA Omega-3" that complied with both the "combination product" guidance and the federal regulations for fat content claims.  Mot. Dismiss at 10; Opp. Mot. Dismiss at 12 n.8.  Moreover, Defendants acknowledge that it is unclear whether the Filled Milk Act remains good law.  Mot. Dismiss at 14 n.4 (citing *Milnot Co. v. Richardson*, 350 F. Supp. 221, 223 (N.D. Ill. 1972)).[9]

Accordingly, the Court DENIES Defendants' motion to dismiss on preemption grounds.

---

[8] Pursuant to 21 U.S.C. § 61(c) (Filled Milk Act), Congress defined "filled milk" as:

> any milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated to which has been added, or which has been blended or compounded with, any fat or oil other than milk fat, so that the resulting product is in imitation or semblance of milk, cream, or skimmed milk, whether or not condensed, evaporated, concentrated, powdered, dried, or desiccated.

[9] The International Dairy Foods Association ("IDFA"), of which Defendant GFA is a member, states in its *Milk and Milk Products Labeling Manual* that "the [IDFA] believes that the addition of fats, oils, or fat or oil containing ingredients to a fat free claim is acceptable as long as the product does not exceed 0.5 grams per reference amount." Compl. ¶¶ 5, 43-45.

### ii.  Sufficiency of Pleadings

With respect to Defendants' contention that Plaintiffs have failed to sufficiently plead

their claims, the Court GRANTS in part, and DENIES in part, Defendants' motion.

### 1.  General Business Law ("GBL") § 349

To state a claim for a violation of GBL § 349, a plaintiff must allege that the defendant

engaged in (1) a consumer-oriented business practice or act that was (2) materially misleading

and (3) the plaintiff suffered an injury thereby.  *See, e.g.*, *City of New York v. Smokes-*

*Spirits.Com, Inc.*, 12 N.Y.3d 616, 621, 911 N.E.2d 834, 838 (2009); *Stutman v. Chemical Bank*,

95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (2000).  Claims brought under GBL § 349

are not subject to the heightened pleading requirements set forth in Rule 9(b).  *Quinn v.*

*Walgreen Co.*, No. 12 Civ. 8187 (VB), 2013 WL 4007568, at *7 (S.D.N.Y. Aug. 7, 2013) (citing

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005)).

Defendants contend that Smart Balance "conspicuously and unambiguously" stated, on

the front panels, that the products contained one gram of fat from the omega-3 oil blend.  Mot.

Dismiss at 1.  Defendants argue that Plaintiffs have failed to state a claim because Defendants

fully disclosed the total fat content on their packaging, and therefore did not materially mislead

consumers.  Mot. Dismiss at 17-20; Reply Supp. Mot Dismiss at 7-8.

New York courts employ an objective test to assess whether an allegedly deceptive

practice is "likely to mislead a reasonable consumer acting reasonably under the circumstances."

*Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 165, 893 N.Y.S.2d 208, 216 (2010) (citations

omitted); *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (applying state

law).  "Such a test ... may be determined as a matter of law or fact (as individual cases require)."

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995).

Here, a reasonable consumer viewing the Smart Balance packaging may very well conclude that it includes one gram of fat per serving. *See* Product Labels, Ex. A-C to Mot. Dismiss.  As in *Verzani v. Costco*, where the court found that the product's name—"shrimp tray with cocktail sauce"—alerted consumers to the fact that the shrimp tray included something more than just shrimp, here, Defendants' milk products include both "Fat Free Milk" *and* "Omega-3s" in their names, alerting consumers to the existence of non-milk components. *Verzani v. Costco Wholesale Corp.*, No. 09 Civ. 2117 (CM), 2010 WL 3911499, at *2 (S.D.N.Y. Sept. 28, 2010).  However, a reasonable consumer might also focus on the more prominent portion of the product label that touts the product as "Fat Free Milk and Omega-3s," and overlook the smaller text that discloses the fat content on the front of the carton or the nutrition label.  *See* Product Labels, Ex. A-C to Mot. Dismiss; *see also Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12 MD 2413 (RRM) (RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) ("[I]n resolving the reasonable consumer inquiry, one must consider the entire context of the label.").  Because it is unclear to the Court whether, as a matter of law, a reasonable consumer might be confused or misled about the fat content of Smart Balance based upon its packaging, the Court DENIES Defendants' motion to dismiss on this basis.  *Ackerman*, 2010 WL 2925955, at *15-*16 (denying motion to dismiss, notwithstanding disclosure of the product's sugar content, because "[t]he fact that the actual sugar content of vitaminwater was accurately stated in an FDA-mandated label on the product [did] not eliminate the possibility that reasonable consumers may be misled" into believing that "vitaminwater" solely consisted of vitamins and water); *Wilson v. Frito–Lay N. Am., Inc.*, 2013 WL 1320468, at *12–13 (N.D. Cal. Apr. 1, 2013)

21

(deeming sufficient allegations that "a reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box" because "[e]ven though the nutrition box could resolve any ambiguity, the Court cannot conclude as a matter of law, in the context of a Rule 12(b)(6) motion, that no reasonable consumer would be deceived by the [labels]." (citations omitted)); *accord In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512 (concluding that what a reasonable consumer would believe that the phrase "all natural" means with respect to the presence of genetically modified organisms, even though an explanatory ring of text stating "no MSG—no preservatives—no artificial flavors" surrounded the words "all natural," raises a factual dispute that cannot properly be resolved on a motion to dismiss).

Defendants also argue that Plaintiffs insufficiently allege injury and causation.  Mot. Dismiss at 17; Reply Supp. Mot. Dismiss at 8 n.8.  A plaintiff adequately alleges injury under GBL § 349 by claiming that he paid a premium for a product based on the allegedly misleading representations.  *See, e.g.*, *Stutman*, 95 N.Y.2d at 30, 709 N.Y.S.2d 892, 731 N.E.2d 608; *Ackerman*, 2010 WL 2925955, at *23.  Here, Plaintiffs claim that, but for Defendants' "unfair and deceptive practices," they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance.  Compl. ¶¶ 7, 81.  Indeed, Plaintiffs claim that they paid price premiums specifically "based on Defendants' misrepresentations," and allege that they deserve damages in the amount of either the purchase prices, or the price premiums, that they paid for Smart Balance.  *Id.* ¶ 81.  Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349, and thus also DENIES Defendants' motion to dismiss for that reason. *Ackerman*, 2010 WL 2925955, at *23; *Ebin v. Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR),

22

2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) (deeming allegations sufficient to state a claim under GBL § 349 where "[t]he deception is the false and misleading label, and the injury is the purchase price."); *Rodriguez v. It's Just Lunch, Int'l*, No. 07 Civ. 9227(SHS) (KNF), 2010 WL 685009, at *9 (S.D.N.Y. Feb. 23, 2010) ("[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices, have not suffered an injury cognizable under NYGBL § 349," but allegations that the plaintiff paid a price premium based upon deceptive practices are sufficient to state an injury).

With respect to Defendants' argument that the Court should, at a minimum, limit Plaintiffs' claimed damages to the alleged price premium that they paid, the Court will address the issue of the measure of damages a later juncture, if necessary.  Mot. Dismiss at 8 n.8.

### 2.  Breach of Warranty

The U.C.C. provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  N.Y. U.C.C. § 2–313(1)(a) (McKinney 2012).   To state a claim for breach of express warranty, a plaintiff must allege that "there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 625 (S.D.N.Y. 2012) (citations omitted).

To the extent that Defendants argue that Plaintiffs fail to state a claim because they never warranted that Smart Balance contained less than 0.5 grams of total fat per serving, and disclosed the fact of one gram of fat per serving in multiple places on the product packaging, the Court

finds that the cases cited by Defendants are distinguishable.[10]  Reply Supp. Mot. Dismiss at 9;

Mot. Dismiss at 21-22.  At this juncture, viewing the allegations in the light most favorable to

Plaintiffs, the Court cannot conclude that Defendants' disclosure of the Smart Balance fat

content negated the alleged promise created by the words "fat free," and will not dismiss the

claim on this basis.  *See, e.g.*, *In re Frito-Lay N. Am., Inc. All Natural Litig.*, 2013 WL 4647512,

at *16, *27 (finding that plaintiffs adequately alleged that the phrase "all natural" on a product

label for Tostitos, SunChips, and Bean Dips created a statement of fact that could support an

express warranty claim under New York law because it was part of the basis of the bargain;

there, the products at issue listed "corn and corn derivatives" among their ingredients on the

nutrition label, but did not specify whether the ingredients were genetically modified); *Smajlaj*,

782 F. Supp. 2d at 103 (finding that plaintiffs adequately stated a claim for breach of express

warranty under New Jersey law premised upon literally true but misleading language on "less

sodium" tomato soup label).

---

[10] In *Grinnell v. G. Beames & Sons, Inc.*, 19 Misc. 3d 1113(A), 859 N.Y.S.2d 903 (Sup. Ct. 2008) (cited in Mot. Dismiss at 22), the plaintiff, a farmer, sought compensation for damage to his crops, allegedly caused by the defendant's negligent spraying of his fields with chemicals.  After the plaintiff initiated the suit against him, the defendant brought a third-party action against the manufacturer and distributor of the herbicide that he had used on the plaintiff's crops, including a breach of warranty claim.  On summary judgment, the court dismissed the defendant's claims against the third-party defendants, including for breach of warranty, because the defendant failed to adduce any proof that the damage to plaintiff's crops resulted from a defect in the herbicides.  In addition, the court noted that the instruction sheets accompanying the herbicide "specifically include[d] 'alfalfa' among the weeds they are intended to kill or control," and thus, "[c]learly there was no 'warranty' or agreement, express or implied, that their application to alfalfa plants would not damage those plants."

    *Grinnell* is of limited help to resolving the instant motion for several reasons.  First, *Grinnell* was decided at the summary judgment phase and does not address pleading requirements for a breach of warranty claim under New York law.  Second, unlike this case, none of the parties in *Grinnell* alleged that the damage to the crops resulted from statements made on the herbicides' *labeling*.  Here, the issue before the Court here is whether Plaintiffs have sufficiently alleged the existence of an express warranty based on the words "fat free" on the Smart Balance labels, even though Defendants also disclosed the one gram of fat per serving on their product packaging. *Grinnell* does not offer a parallel analogy.

    In *DiBartolo*, the second case cited by Defendants, the breach of express warranty allegations failed because the plaintiff did not specify which words allegedly created the warranty, and claimed that a product ad created a misleading effect in the aggregate.  914 F. Supp. 2d at 625-26 (cited in Mot. Dismiss at 22; Reply Supp. Mot. Dismiss at 9).  Here, the alleged basis of the warranty is the particular phrase "fat free."  Compl. ¶ 84.

However, the Court notes that under New York law, privity is an essential element of a cause of action for breach of express warranty, unless the plaintiff claims to have been personally injured. *DiBartolo*, 914 F. Supp. 2d at 624-25 (citing N.Y.U.C.C. § 2–318).  In *Ebin v. Kangadis Food Inc.*, a similar case wherein the plaintiffs alleged that an oil manufacturer breached an express warranty that its product was "100% Pure Olive Oil," Judge Rakoff held that the plaintiffs' failure to adequately plead privity was fatal to their express warranty claim:

> Under New York law, privity is normally an essential element of a cause of action for express warranty … [h]owever, the U.C.C. includes a personal injury exception.  While in New Jersey, "the absence of privity 'no longer bars a buyer from reaching through the chain of distribution to the manufacturer,' New York maintains the requirement of privity.  Here, because no personal injury is alleged, privity is thus required to assert a breach of warranty claim under New York law. Plaintiffs have not alleged that they were in privity with Kangadis and thus any breach of warranty under New York law must fail.

2013 WL 6504547, at *6 (internal citations and quotation marks omitted).  Here, as in *Ebin*, Plaintiffs have pleaded solely economic injury, and therefore privity is required to assert a breach of warranty claim.  *Id.* (citing *DiBartolo*, 914 F. Supp. 2d at 624-25); *see also* N.Y.U.C.C. § 2–318.  However, Plaintiffs merely allege that they purchased Defendants' products "in the state of New York," but do not specify where, or from whom.  Compl. ¶¶ 9, 10.

The Court finds that, because Plaintiffs have failed to allege that they were in privity with Defendants, their claim for breach of warranty under New York law is DISMISSED, without prejudice.  *Ebin*, 2013 WL 6504547, at *6.

### 3.   Unjust Enrichment

To state a claim for unjust enrichment under New York law, a plaintiff must allege that "(1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) ... it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  *Baron v.*

*Pfizer, Inc.*, 42 A.D.3d 627, 629, 840 N.Y.S.2d 445, 448 (2007) (citing *Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 31 A.D.3d 983, 988, 819 N.Y.S.2d 182 (2006)).  Yet, an unjust enrichment claim cannot survive "where it simply duplicates, or replaces, a conventional contract or tort claim."  *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790-91, 967 N.E.2d 1177, 1185, *rearg. denied*, 19 N.Y.3d 937, 973 N.E.2d 187 (2012); *Ebin*, 2013 WL 6504547, at *7.

Here, Plaintiffs claim that they purchased Smart Balance because of Defendants' purported misrepresentations, and Defendants allegedly retained the revenue generated from Plaintiffs' purchases.  Compl. ¶¶ 93-95.  Accepting the truth of the allegations in the Complaint, Defendants reaped a financial reward at Plaintiffs' expense.  However, to the extent that Plaintiffs' other claims succeed, "the unjust enrichment claim is duplicative," and "if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects."  *Corsello*, 18 N.Y.3d at 790-91, 967 N.E.2d at 1185.  Accordingly, the Court finds that Plaintiffs' unjust enrichment claim is merely duplicative of their other causes of action and DISMISSES this claim.  *Id.*; *Ebin*, 2013 WL 6504547, at *5, *7 (holding that plaintiff adequately pleaded claims under New York law for violation of GBL § 349, negligent misrepresentation, and fraud, but dismissing unjust enrichment claim as duplicative).

### iii.  Statutes of Limitations

Finally, Defendants argue that Plaintiffs' claims should be dismissed to the extent that relevant statutes of limitations bar them.  Mot. Dismiss at 23.  Defendants allege, and Plaintiffs do not contest, that the relevant statutes of limitations bar Plaintiffs from bringing a GBL § 349 claim for purchases made prior to February 21, 2010 and a breach of express warranty claim based on purchases made prior to February 21, 2009.  Reply Supp. Mot. Dismiss at 10 n.9.  Accordingly, the Court GRANTS Defendants' motion in that respect and DISMISSES, with

prejudice, Plaintiffs' claims to the extent that they include a GBL § 349 claim for purchases made prior to February 21, 2010 and a breach of express warranty claim based on purchases made prior to February 21, 2009.  *See* N.Y. C.P.L.R. 214 (McKinney) (three-year statute of limitations applies to claims brought under GBL § 349); *Woods v. Maytag Co.*, No. 10 Civ. 0559 (ADS) (WDW), 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) (per N.Y. U.C.C. 2–725, four-year statute of limitations applies to claims for breach of warranty).

Given that the Court has dismissed Plaintiffs' unjust enrichment claim, the Court need not address whether it may be time-barred.

**III.   Conclusion**

For the reasons set forth above, Defendants' motion to dismiss the Complaint is GRANTED in part and DENIED in part.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 12.

The parties are to appear for a status conference on February 20, 2014 at 9:30 a.m.

It is SO ORDERED.

Dated:    January 29, 2014
          New York, New York

Edgardo Ramos, U.S.D.J.

27